In re HUDSON OIL COMPANY, INC., Hudson Refining Company, Inc., Hudson Van Oil Company of Kansas City, Inc., Hudson Realty Company, Inc., Hudson Stations, Inc., Hudson Van Oil Co. of Florida, Inc., Hudson Van Oil Co. of California, Inc., Hudson Van Oil Company, Debtors.

Bankruptcy Nos. 84–20002 to 84–20009.

United States Bankruptcy Court, D. Kansas.

May 24, 1989.

See also, Bkrtcy., 91 B.R. 932.

Mendel Small, Scott J. Goldstein, Spencer, Fane, Britt & Brown, Kansas City, Mo., for debtors.

Walter Kellogg, Dallas, Tex., Trustee.

David Snodgrass, Neil J. O'Brien, Terri A. Hunter, Roy Morris, Gardere & Wynne, Dallas, Tex., James Holmberg, F. Stannard Lentz, Lentz & Clark, Overland Park, Kan., for trustee.

Dennis R. Dow, Robert T. Adams, Shook, Hardy & Bacon, Kansas City, Mo., Richard H. Page, Overland Park, Kan., Edward W. Hess, Jr., Lewis, D'Amato, Brisbois & Bisgaard, Santa Ana, Cal., for movant.

Thomas M. Mullinix, Richard C. Wallace, Evans & Mullinix, Kansas City, Kan., for creditors Committee.

Carol Park Wood, Wichita, Kan., U.S. Trustee.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Chief Judge.

This matter came for hearing on January 18, 1989 on the motion of Barbara Schweitzer for relief from the automatic stay and her motion for leave to amend claim or file new claim. The trustee, Walter Kellogg, filed objections to both motions. The movant, Barbara Schweitzer, appeared by and through counsel, Dennis R. Dow. The trustee, Walter Kellogg, appeared by and through his attorney, James Holmberg. The unsecured creditors committee appeared by and through counsel, Richard C. Wallace.

### FINDINGS OF FACT

This Court finds that the movant, Barbara Schweitzer, and the trustee, Walter Kellogg, have stipulated to the following facts:

1. On November 1, 1979, movant and Hudson Oil Co., Inc. ("debtor") entered into a lease agreement for certain property situated in the City of Long Beach, County of Los Angeles, State of California, described as Lot 2, Tract 24928, as permanently recorded in Book 643, pp. 95–96, inclusive, map records in the office of the Recorder of the County of Los Angeles, State of California, together with buildings, fixtures, and improvements located thereon (the "property"). Debtor operated a gasoline service station on the property subsequent to February 4, 1969 pursuant to an assignment of a lease executed by movant's predecessor in interest.

2. On January 3, 1984, an order for relief was entered against debtor pursuant to the filing of a voluntary petition for relief under chapter 11 of Title 11 of the United States Bankruptcy Code.

3. Debtor operated a gasoline station on the property until sometime prior to August 16, 1984 when movant was notified that the property had been abandoned.

4. Pursuant to the terms of the lease, debtor was required to operate its station in accordance with applicable statutes, ordi-

nances and regulations and agree to indemnify movant against any liability arising from its failure to do so. Debtor further agreed to indemnify and save movant harmless from and against any and all claims, demands, and causes of action of any nature whatsoever and any expenses incident to the defense of and by movant therefrom for injury, loss, or damage to persons or property which grew out of or arose from or connected with debtor's use and occupation of the property. Further, pursuant to the lease, debtor was required to procure and maintain public liability insurance naming both movant and debtor as named insureds to protect against any such liability as may arise.

5. On or about August 16, 1984, movant was requested by the City of Long Beach, California, to remove underground storage tanks which were left on the property by debtor.

6. On September 6, 1984, an Order and Notice of Final Date to File Proofs of Claim setting January 4, 1985 as the claims bar date was filed with the Court. On October 11, 1984, a Certificate of Mailing pertaining to said Order and Notice was filed with the Court by F. Stannard Lentz, one of the attorneys for the trustee. The Certificate of Mailing named movant as a party to whom the Order and Notice of Final Date to File Proof of Claims was mailed.

7. On November 19, 1984, the Court entered an order approving the rejection of the lease between movant and debtor.

8. The underground storage tanks were removed sometime in November or December, 1984. At that time, no one from the City of Long Beach or the tank removal company noticed any evidence of contamination of the property.

9. In early 1985, after the tanks were removed from the property, movant's attorney, Mr. Hallack Hoag, entered into negotiations for the sale of the property to the adjacent property owner, McDonalds Corporation ("McDonalds").

10. On January 2, 1985, movant filed her unsecured claim for the amount of $24,058.81 arising out of the lease of the real property by debtor. Specifically, movant alleged that she was entitled to $3,000.00 of unpaid rent, $1,058.81 for accrued but unpaid property taxes, $3,850.00 for removal of three (3) underground tanks, and $16,150.00 for equipment debtor removed from the real property. On December 11, 1986, the trustee filed his objection to claim no. 507 of Barbara Schweitzer. On or about January 14, 1987, movant filed her response to trustee's objection. Trustee and movant eventually agreed to an order allowing claim no. 507 as a general unsecured claim in the amount of $13,358.81. An order to this effect was entered and filed by the Court on May 14, 1987.

11. On or about August 5, 1985, the City of Long Beach, California Department of Health, notified debtor that it had received information that the property had extensive ground and water contamination due to leaking underground storage tanks and supply lines. This notice to debtor of the possibility of contamination further required that debtor determine the extent of contamination in both groundwater and soil and provide a site characterization plan within 30 days. In response to this letter, debtor referred government officials to movant. On or about August 20, 1985, movant was notified by the Hazardous Material Unit of the Department of Public Health of the City of Long Beach, California, that the property may have become contaminated. The California authority ordered that testing be done on the property to determine the possibility of contamination.

12. Throughout 1985, McDonalds continued their negotiations for the purchase of the property from Barbara Schweitzer. At this time, McDonalds had also engaged an independent soil and foundation testing company to determine the extent of the contamination of the property. In the course of negotiations for the purchase of the property from Barbara Schweitzer by McDonalds, McDonalds engaged an independent soil and foundation testing company (Giles Engineering) to determine the suitability of the subsurface conditions existing at the site for its intended use. In

the course of conducting soil and foundation testing, McDonalds' soil and foundation testing consultants found evidence of sub-surface contamination.

13. On or about March 6, 1986, movant was notified by McDonalds that it no longer wished to expend money on soil contamination testing. At this time, further testing was still recommended.

14. On or about April 22, 1986, movant was informed by McDonalds that it had terminated the real estate purchase contract entered into between McDonalds and movant on March 6, 1986 because the soil contamination rendered the property unsatisfactory. This was the first time movant and her attorneys were provided the results of contamination testing which established that the property was, in fact, contaminated.

15. On or about August 4, 1986, movant's attorney was informed that movant would be required to expend additional money on further testing and possible clean-up costs in order to determine the amount of the contamination of the property.

16. In September, 1986, movant engaged the Mittelhauser Corporation to prepare a site characterization report to define the extent and source of contamination on the property.

17. Testing has been conducted on the property from September, 1986 up until the time of this hearing. Movant has incurred substantial costs (in excess of $21,000.00) for engineering consultation on this contamination claim and will incur future testing and clean-up costs. The full amount of such costs are to be determined later.

18. In 1987, attorneys for movant contacted attorneys for the trustee in order to obtain information concerning the maintenance of public liability insurance with both debtor and movant named as insureds under the policy as required by the lease. Contacts between movant's attorney and attorney for the trustee included, but were not limited to the following:

a. On February 12, 1987, Dennis R. Dow, attorney for movant, discussed with Carl Clark, attorney for the trustee, and Tom Raimo, president of debtor, the existence of a possible claim for contamination to the property caused by acts and/or omissions of the debtor. Mr. Dow also inquired into the existence of insurance policies naming movant as an additional named insured as required by the terms of the lease;

b. On March 20, 1987, Mr. Clark wrote Mr. Dow to inform him of the insurance carriers for the debtor from May 12, 1981 who could possibly provide coverage for claims due to the contamination of the property; and

c. On October 19, 1987, Mr. Dow wrote a letter to the attorney for the trustee, Carl Clark, *inter alia*, confirming a discussion concerning problems movant was having with California authorities concerning contamination of the groundwater and soil on the property as a result of leakage of petroleum products during the term of the lease and requesting further information regarding insurance pursuant to the lease in order that movant might make a claim directly as an additional insured with one or more insurance carriers.

19. On or about November 5, 1987, attorney for movant was informed by the president of debtor that debtor has a number of policies in effect during the term of the lease, none of which named movant as an additional named insured as required by the lease. Attorneys for movant continued to discuss with attorneys for the trustee the possibility of obtaining information concerning whether movant was named as an additional named insured pursuant to the terms of the lease.

## CONCLUSIONS OF LAW

On June 16, 1988, the movant, Barbara Schweitzer, filed a motion for relief from the automatic stay to pursue an action in California state court to recover costs and damages she has incurred and will incur due to the debtor's acts and/or omissions on the real property debtor leased from the movant. These acts and/or omissions have, according to state and local environmental officials in California caused the subsurface of this property to become con-

taminated with hazardous and toxic substances. In her motion she alleges that the claims may be covered by public and general liability insurance policies.

On June 27, 1988, the trustee objected to the motion on two grounds: (1) That the claim raised was barred because the claims bar date for filing of any additional or new claims had passed; and (2) That the claim was barred under the principle of res judicata in that the claim represents a claim that should have been included in a previous proof of claim filed by movant which was allowed by court order after objection by the trustee and negotiation and settlement between movant and trustee.

On November 18, 1988, in reply to the trustee's objection, the movant requested leave to amend her claim or to file a new claim. The movant asserts that her claim for damages is properly raised because: this claim arises out of the same facts upon which movant's original claim was based; and movant made an informal proof of claim which she may now amend by the filing of a formal proof of claim. Alternatively, the movant seeks leave from the Court to file a new claim on the grounds that neither movant nor her attorneys were properly informed of the bar order and that this claim arose post-petition.

On December 8, 1988, the trustee objected to the motion for leave to amend claim or file a new claim. On December 27, 1988, the movant filed a reply to trustee's objection to amend claim or file a new claim and trustee's suggestions in opposition to motion for relief from automatic stay. On January 13, 1989, the trustee filed a response to movant's reply to trustee's objection to motion for leave to amend claim or file a new claim.

As can be seen from the above statement of the contentions, this case is extremely complicated. The parties have filed six separate pleadings which raise issues within issues and subissues within subissues. However, this Court finds that this matter can be reduced to three broad questions:

A. Whether Barbara Schweitzer's claim is a post-petition claim or a prepetition claim;

B. If Barbara Schweitzer's claim is a prepetition claim, should she be granted leave to file either an amended proof of claim or a new claim outside the bar date; and

C. If Barbara Schweitzer is granted leave to file either an amended proof of claim or a new proof of claim, should she be granted relief from the automatic stay to pursue her claim in the state courts of California.

## A. IS MOVANT'S CLAIM FOR CONTAMINATION OF THE SERVICE STATION PREMISES A PREPETITION CLAIM SUBJECT TO THE AUTOMATIC STAY PROVISIONS OF SECTION 362(a) OR IS IT A POST-PETITION CLAIM?

Despite the broad reach of the automatic stay, it appears that Congress did not intend it to be all encompassing. It has been held that claims arising post-petition are *not* subject to the automatic stay of section 362(a)(1). *In re Powell*, 27 B.R. 146, 147 (Bankr.W.D.Mo.1983). Logically, post-petition claims are also not subject to the filing deadline for prepetition claims. Thus, the first issue must be whether the movant's claim arose before or after January 3, 1984 when the debtor filed its voluntary petition for relief.

Section 101(4) defines a claim as including a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." The drafters of the Code obviously intended this definition to be very broad in scope. The legislative history of section 101(4) states: "[B]y this broadest possible definition and by use of the term throughout the title 11, especially in subchapter I of Chapter 5, the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case."

The stipulations entered into between the movant and the trustee indicate that the debtor operated a gasoline station on the property owned by the movant and leased to the debtor since February 4, 1969. On January 3, 1984, the debtor filed a volun-

tary petition for relief under chapter 11. On August 20, 1985, the movant was notified by governmental authorities in California that the property may have become contaminated. On August 4, 1986, the movant was informed by California authorities that she would have to expend money on further testing and cleanup of the property.

To the degree the movant's claim for contamination of her property is an indemnification action pursuant to the indemnity clause of the lease, this Court finds that the movant's claim falls within the broad definition of a "claim" contained in section 101(4). This Court finds further that the movant's claim for contamination was a contingent, unliquidated claim at the time of the filing of the bankruptcy petition, and is thus a prepetition claim subject to the automatic stay. A "contingent" claim is one where liability attaches upon the occurrence of a future event. *In re Bowers,* 16 B.R. 298 (Bankr.D.Conn.1981). Any cause of action (as distinguished from "claim") for indemnification under the indemnity clause of the lease was dependent upon a violation of environmental laws by the lessee, Hudson Oil. This Court assumes that the movant/lessor is alleging that Hudson Oil violated the environmental law by allowing gasoline to seep from the underground storage tanks. Almost definitely, this act occurred prepetition since the debtor ceased operating the gas station post-petition. Thus, movant had a right to payment under the indemnification clause of the lease at the time of the filing of the petition even though the cause of action did not mature until after the filing of the petition. *See In re THC Financial Corporation,* 686 F.2d 799, 802 (9th Cir.1982) (the Ninth Circuit recognized that an indemnification claim existed as a contingent claim at the time of the filing of the petition even though the claim did not mature until post-petition).

## B. SHOULD THE MOVANT BE GRANTED LEAVE TO EITHER AMEND HER CLAIM OR TO FILE A NEW CLAIM OUTSIDE THE BAR DATE?

As stated earlier, the movant requests leave to amend her claim or to file a new claim. The movant asserts that her claim for damages is properly raised because: (1) this claim arises out of the same facts upon which movant's original claim, claim number 507, was based; and (2) movant made an informal proof of claim which she may now amend by the filing of a formal proof of claim. Alternatively, the movant seeks leave from the Court to file a new claim on the grounds that neither movant nor her attorneys were properly informed of the bar order.

The trustee, on the other hand, objects to the motion for leave to amend claim or file a new claim on the following grounds: (1) That movant's assertion of the claim for alleged contamination should be barred by the principle of res judicata since the claim for alleged contamination is a claim which should have been asserted in movant's original proof of claim and is a claim of which movant had knowledge before the order of allowance was entered; (2) That movant's motion to amend or file a new proof of claim should be viewed as a motion to reconsider the allowance of a claim pursuant to section 502(j) and should be denied since movant has failed to show cause for reconsideration; (3) That movant's motion for leave to amend the proof of claim should be denied since movant seeks to amend its proof of claim well after passage of the claims bar date and amendment of either the formal proof of claim filed January 2, 1985 or the alleged informal proof of claim made by movant is improper; (4) That the filing of the claim for contamination as a new proof of claim is improper since movant is attempting to file such claim almost four years after passage of the claims bar date; and (5) That the doctrine of laches bars assertion of movant's claim for contamination where movant knew of the potential claim for three years before asserting the claim in the bankruptcy proceedings and movant's original proof of claim has been litigated between trustee and movant.

■ *1. Although An Amendment of Original Proof of Claim is Improper,*

*Movant Should Be Granted Leave to File a New Claim Outside the Bar Date.* At the outset, this Court agrees that the movant should not be allowed to *amend* her original proof of claim number 507 to include her claim for contamination. An amendment is not proper under the circumstances. Generally, courts will allow amendments to proofs of claims in order "to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth on the original claim." *In re International Horizons, Inc.,* 751 F.2d 1213, 1216 (11th Cir.1985). However, courts will permit amendments where the *original claim* provides notice to the court of the existence and amount of the claim, and that the creditor intends to hold the estate liable. *Id.* at 1217. In this case, the *original claim,* claim number 507, was for: unpaid rent; cost of removing of underground tanks; unpaid real estate taxes; and for unauthorized removal of equipment in violation of the lease terms. The movant requests leave to amend that claim to include damages for contamination. This Court finds that the original claim gave no notice or inkling to this Court of the existence and amount of the contamination claim and that the movant intended to hold this estate liable. The original claim contains no allegation of contamination of the premises.

 However, this Court finds that the movant should be granted leave to file a *new* claim outside the bar date. Bankruptcy Rule 3003(c)(3) provides that: "The Court *for cause* shown may extend the time within which proofs of claim or interests may be filed." (emphasis added). Such an extension may be sought and granted before or after the time has expired under the court's order fixing the bar date.

 *Collier on Bankruptcy* lists a number of factors in determining, after the bar date, whether cause exists for granting an extension to a creditor for filing a claim. These include: whether the delay will prejudice the debtor; the length of the delay and its impact on administration; whether the delay was beyond the reasonable control of the person seeking the extension; and whether the creditor had notice of the case. 8 Collier on Bankruptcy 3003.05[5] pg. 3003–11, 12 (15th ed. 1989).

This Court finds that the movant clearly has shown cause for purposes of 3003(c)(3). As noted earlier, the movant was first informed of the possibility that the property upon which the debtor operated the gasoline station was contaminated on or about August 20, 1985. On or about August 4, 1986, the movant was informed by California environmental authorities that she would in fact have to incur testing and cleanup costs in order to determine the amount of contamination on this property. These events occurred *after* the bar date set by the Court (January 4, 1985). The delay was beyond the reasonable control of the movant.

Moreover, the length of the delay in the filing of the claim will not negatively impact the administration of this case. Admittedly, the movant waited a very long time, over two years, after she learned of the possible claim to file the present motion for leave to file a new claim. In any case but this case, this Court would not be inclined to grant her leave. But as this Court has said before in many other instances, *In re Hudson Oil* is not an ordinary bankruptcy. This case is over five (5) years old and this Court is still waiting to confirm a plan of reorganization. In the course of this five year old case, a two year delay by the movant is not unreasonable and has had nothing to do with the delays in the administration of this case. Neither the trustee nor the debtor have been prejudiced in any way by the delay in filing the new claim. The stipulations clearly show that counsel for Schweitzer and counsel for the trustee wrote each other concerning this potential claim throughout this proceeding. Certainly, the trustee cannot express surprise that the movant holds this new claim against the estate.

Finally, this Court is ever mindful that it sits as a court of equity. All the equities in this case lie with Barbara Schweitzer. Through no fault of the claimant, the debt-

or allegedly polluted this claimant's property. The debtor was supposed to have carried insurance to cover this loss and everyone handling this case acted accordingly. Now, when the debtor realizes that there may not be insurance, the debtor attempts to shield itself from liability behind a technical and ministerial rule concerning the untimely filing of claims and to leave Mrs. Schweitzer to face the California authorities by herself. Bankruptcy courts are courts of equity, and must assure "that substance will not give way to form, [and] that technical considerations will not prevent substantial justice from being done." *In re Anderson–Walker Industries, Inc.*, 798 F.2d 1285, 1287 (9th Cir.1986) (*citing Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

*2. Movant's New Claim for Contamination is Not Barred by the Doctrine of Res Judicata or the Doctrine of Laches.* The trustee argues that the movant's claim for alleged contamination should have been raised prior to the final order approving the compromise of movant's original claim.

This Court finds that res judicata is not applicable because this doctrine only applies to bar matters that were actually litigated between the parties or matters that could have been litigated. The movant is not trying to relitigate claim number 507. The trustee himself, when addressing the issue of whether the movant could "amend" her claim, asserted that this new claim for contamination was separate and apart from the original claim 507. The trustee is now changing positions and arguing that for the sake of res judicata the new claim for contamination is something that could have been litigated in considering claim number 507. The trustee cannot have it both ways. This Court has already held that the claim for contamination is a new claim, and as such, the doctrine of res judicata would not apply.

Likewise, a motion for reconsideration in this context is illogical because movant's claim for contamination was never "considered" prior to a court determination to allow or disallow the claim. *Brielle Associates v. Graziano*, 685 F.2d 109 (3d Cir. 1982).

Moreover, this Court finds that the trustee's assertion that the doctrine of laches bars the claim is without merit. The doctrine of laches requires not only an unreasonable delay on the part of the party asserting a claim but a prejudicial change of position on the party asserting laches. This Court has already found no unreasonable delay on the part of the movant and no prejudice to the estate in light of how long it is taking to administer this case. We are five years into this case and this Court has yet to approve a disclosure statement, let alone a plan of reorganization.

C. SHOULD MOVANT BE GRANTED RELIEF FROM THE AUTOMATIC STAY TO HAVE HER CLAIM DETERMINED AND LIQUIDATED IN THE CALIFORNIA STATE COURT?

When movant initially requested relief from the automatic stay to pursue an action in the state courts of California for the alleged contamination to her real property, she was under the impression that the claim was covered by insurance. As the movant cites in her suggestions in support of this motion, courts generally will allow creditors relief to go against a debtor's insurance carrier. *See, e.g., In re Nkongho*, 59 B.R. 85 (Bankr.D.N.J.1986). In weighing any hardship to the creditor from denial of relief against the effect on the administration of debtors case from granting of relief, courts find that insurance coverage minimizes effect on the administration of case from the granting of stay relief.

However, since the filing of these motions, it has become apparent that there is probably no insurance coverage. The movant failed to show that there is insurance coverage which will cover any judgment obtained and/or assume the costs of defense of any such state court action. This fact is crucial and distinguishes this case from those relied upon by the movant.

This Court finds that the bankruptcy court is the proper forum to determine and liquidate the movant's new contingent claim. The process of determining the allowance of claims is a "core" proceeding and of basic importance to the administration of a bankruptcy estate. *See* 28 U.S.C.

**80**

section 157(b)(2). *See also In re Towner Petroleum Co.*, 48 B.R. 182, 191 (Bankr.W. D.Okla.1985). Moreover, section 502(c)(1) grants this Court the power to estimate for purposes of allowance any contingent or unliquidated claim.

Therefore, this Court must deny the movant's request for relief from the automatic stay. She can file her new claim. The trustee will have an opportunity to object. This Court will then hold a hearing to determine whether to allow her claim and if so in what amount.

IT IS THEREFORE, BY THE COURT, ORDERED That the motion of Barbara Schweitzer for leave to file a new claim is GRANTED and that the trustee's objection thereto is OVERRULED. The Movant will have 20 days from the date of this order to file her new claim. The trustee will then have 20 days from the filing of the new claim to object to it.

IT IS FURTHER, BY THE COURT, ORDERED That the motion of Barbara Schweitzer for relief from the automatic stay is DENIED and that the trustee's objection thereto is SUSTAINED.

This Memorandum shall constitute my findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.