In re ANALYTICAL SYSTEMS, INC., Debtor.

ITT COMMERCIAL FINANCE CORP., Plaintiff,

v.

Virginia DILKES, Defendant.

Civ. A. No. 1:89–CV–0261–JOF.

United States District Court, N.D. Georgia, Atlanta Division.

Jan. 3, 1990.

Frank B. Wilensky, Macey, Wilensky, Cohen, Wittner & Kessler, Atlanta, Ga., for plaintiff.

John J. Almond, Rogers & Hardin, Atlanta, Ga., for defendant.

Robert Trauner, Trauner, Cohen & Thomas, Atlanta, Ga., for debtor.

## ORDER

FORRESTER, District Judge.

This matter is before the court on ITT Commercial Finance Corporation's appeal from the bankruptcy court order, *In re Analytical Systems, Inc.*, 97 B.R. 676 (Bankr.N.D.Ga.1988), finding the appellant, Virginia Dilkes, was entitled to file a late claim upon a showing of excusable neglect.

## I. STATEMENT OF THE CASE.

Virginia Dilkes is the former wife of James Dunning, the sole shareholder, president, and chief executive officer of the debtor, Analytical Systems, Inc.[1] She and Dunning had business dealings between themselves and their companies, and Dilkes had executed a promissory note in favor of the debtor for over $378,000. At some point, this amount was reduced on the corporate books to $51,000 without her knowledge. Her claim was listed on the schedule for $51,456.64 as without dispute by the debtor. She received notice of the Chapter 11 case, including notice of a bar order notifying the creditors that they must file claims before July 10, 1986 if they were scheduled as disputed, contingent or unliquidated. This notice also stated that creditors had the responsibility for determining that the scheduled amount was accurate. Ms. Dilkes asked Dunning whether she needed to respond to these notices, and testified that his response was, "No, you do not need to respond to these notices, you are already scheduled and so is your company." Transcript of Proceedings before Judge Cotton, August 9, 1988, p. 19. She testified that there was no discussion about the amount of her scheduling because "there was no reason to question that he was not, in fact, looking out for my interest as a shareholder and as a wife." *Id.* Mr. Dunning failed to tell her that the amount of her claim had been reduced on the corporate books. She relied on this representation and did not file proof of claim. While going through a divorce with Mr. Dunning in July 1987, Ms. Dilkes discovered her claim was scheduled for only $51,456.55. On September 18, 1987, she filed a proof of claim for $378,872.63 plus interest.

Upon objection by the debtor and by the principal secured creditor, ITT Commercial Finance Corp., the bankruptcy court held a hearing. The court disallowed Dilkes' claim as untimely as she did not show excusable neglect required under the bankruptcy rules and *Biscayne 21 Condominium Association v. South Atlantic Financial Corp. (In re South Atlantic Finan-*

1. The debtor filed this voluntary Chapter 11 case on January 30, 1986.

*cial Corp.),* 767 F.2d 814 (11th Cir.1985), *cert. denied,* 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986). Order, *In re Analytical Systems,* (Bankr.N.D.Ga. August 30, 1988). The court subsequently granted Dilkes motion for reconsideration, allowing the late filed claim. *In re Analytical Systems, Inc.,* 97 B.R. 676 (Bankr.N.D.Ga. 1988). The bankruptcy court found that Georgia law establishes a confidential relationship between husband and wife, that Dunning did not deal fairly with Dilkes in his spousal role and in his fiduciary role as principal of the debtor in possession, and that this met the requirements of excusable neglect. ITT appeals. This court held oral argument and ordered further briefing.

ITT argues that the bankruptcy court's initial decision was correct—that Dilkes failed to check the schedules, and that her status in this action as a creditor makes her spousal relationship to Dunning irrelevant, so that excusable neglect was not shown. Appellee, predictably, disagrees, contending that a fiduciary relationship between the husband and wife exists, and that Dilkes' reliance on that confidential relationship in not filing a claim was excusable neglect.

## II. CONCLUSIONS OF LAW.

### A. *Standard of Review.*

■ The parties disagree as to the standard of review of the legal conclusions by the bankruptcy court. ITT contends that legal conclusions are reviewed *de novo,* while Dilkes contends they are governed by an abuse of discretion standard. Bankruptcy courts' findings of fact cannot be set aside unless clearly erroneous. Bankruptcy Rule 8013. However, because the bankruptcy court's ability to allow a late filed claim under Bankruptcy Rules 3003(c)(3) and 9006(b)(1) is discretionary ("The court for good cause shown may at any time in its discretion...." Rule 9006(b)(1)), this court's review must be subject to the abuse of discretion standard. *Vertientes, Ltd. v. Internor Trade, Inc., (In re Vertientes, Ltd.),* 845 F.2d 57, 59 (3d Cir.1988). Moreover, this is the standard used by the Eleventh Circuit in *In re South Atlantic Corp.,* 767 F.2d at 819 ("We hold that the bankruptcy court did not abuse its discretion in refusing to allow Biscayne to file a proof of claim eighteen days after the bar date.").

### B. *Excusable Neglect.*

■ Bankruptcy Rule 3003(c)(3) allows the court to extend the time to file a proof of claim for "cause shown." This rule must be read in conjunction with Rule 9006(b), *In re South Atlantic,* 767 F.2d at 817. Rule 9006(b) provides that when a party moves for extension of time after the expiration of the time period, as here, the party must show that its failure to act before the deadline was due to excusable neglect. *Id.*[2] The Eleventh Circuit has interpreted this excusable neglect standard under Bankruptcy Rule 9006(b) as requiring the movant to show that "the failure to timely perform a duty was due to circumstances which were beyond the reasonable control of the person whose duty it was to perform." *Id.* This is consistent with the definition of excusable neglect under Fed. R.Civ.P. 6(b)(2). *Id.* at 818. Prejudice to other creditors or the debtor is not a relevant inquiry. *Id.* at 818–19.

■ It is plain that under Georgia law a confidential relationship exists between husband and wife. O.C.G.A. § 23–2–58;[3]

**2.** Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expira-

tion of the specified period permit the act to be done where the failure to act was the result of excusable neglect.
Bankruptcy Rule 9006(b)(1).

**3.** Any relationship shall be deemed confidential whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the

*Adair v. Adair,* 220 Ga. 852, 142 S.E.2d 251 (1965) ("extremely confidential relationship between a husband and wife"); *Cain v. Ligon,* 71 Ga. 692 (1883); *see also Cochran v. Murrah,* 235 Ga. 304, 307, 219 S.E.2d 421 (1975) (citing *Cain v. Ligon* as example of case where confidential relationship was found between husband and wife). The existence of a confidential relationship entitles one party to it to rely on the representations made by the other because,

> by the very terms or circumstances of the arrangement of dealings between the parties there rests upon the party acting for another the duty of protecting and furthering the interests of the person for whom he is acting, not those of himself or of anyone else. The person so placing trust in him by virtue of this confidential relationship is justified by the situation of this interest in believing that the other party will act fairly and make true representations.

*Dover v. Burns,* 186 Ga. 19, 25–26, 196 S.E. 785 (1938). Cases based on the confidential relationship of husband and wife are based on the "imperative duty of a spouse to be truthful and faithful to the other, as well as the fact that one can rely upon the other, and thereafter be awarded relief in court against any harm suffered because of a breach of duty by the other." *Adair,* 220 Ga. at 855–56, 142 S.E.2d 251.

■ The confidential relationship between husband and wife therefore entitles each to rely upon the representations of the other. In the present case, the bankruptcy court found that Dunning breached this relationship and duty when he failed to tell Dilkes that her claim was scheduled for much less than she believed to be the case. The court did not err in making this finding.

■ ITT emphasizes that Dilkes and Dunning were acting in the relationship as debtor and creditor, and their relationship as husband and wife is irrelevant. However, where a debtor and creditor are husband and wife, it is impossible to separate

utmost good faith, such as the relationship between partners, principal and agent, etc.

their roles and breach of duty as a husband or wife can carry over to the business relationship. Requiring a husband or wife to check behind the other's back every time one makes a representation to the other, whether about business matters or otherwise, would be bad public policy. Husbands and wives are entitled to rely on each other, and imposing a requirement in the law contrary to that would undermine the marital relationship.

■ Therefore, the breach of a confidential marital relationship where a husband and wife are sole shareholder and CEO of a debtor corporation and creditor to that corporation in a bankruptcy action does amount to excusable neglect under Bankruptcy Rule 9006(b), and the bankruptcy court did not abuse its discretion in allowing Dilkes' late filed claim upon such a showing. These are unique, extraordinary circumstances, *Commissioner of Revenue v. First Software Corp. (In re First Software Corp.),* 97 B.R. 711 (D.Mass.1988), that justify a finding of excusable neglect.

■ ITT argues that no finding of fraud or undue influence was made in this case as was in the Georgia cases discussed by the bankruptcy court. Though the bankruptcy court made no specific finding of fraud, silence where one has a duty to speak as a fiduciary is constructive fraud. *Adair,* 220 Ga. at 855, 142 S.E.2d 251 ("constructive fraud 'consists in any act of omission or commission contrary to legal or equitable *duty, trust or confidence* justly reposed, which is contrary to good conscience and operates to the injury of another,'" (emphasis in original), citing *Cain v. Ligon,* 71 Ga. at 694). In that case, both omission to speak and false representations were charged, sufficient to show that the wife's signature was secured by fraud practiced by her husband. *Id.,* 220 Ga. at 856, 142 S.E.2d 251. Therefore, the bankruptcy court's finding that Dunning breached the confidential relationship between the parties by not speaking can also be seen as a finding of constructive fraud. O.C.G.A. § 23–2–58.

This finding of fraud supports even further the conclusion that excusable neglect has been presented.

The finality interest in having a specific bar date is not undermined by the conclusion that excusable neglect is present in this case. This unique factual situation will not often be repeated, and this holding is not likely to open the floodgates for bankruptcy courts to consider every reason for a late filed claim.

 At oral argument, the court asked the parties to discuss and then brief whether the September 1987 claim could be considered an amendment to the previous filed scheduled claim. In order to constitute an amendment, an informal proof of claim must have already been filed with the court. *United States v. International Horizons, Inc. (In Re International Horizons)*, 751 F.2d 1213 (11th Cir.1985). Dilkes argues that the scheduling of her claim should constitute a proof of claim, as a proof of claim is deemed filed when scheduled unless it is scheduled as disputed, contingent or liquidated. 11 U.S.C. § 1111(a). Though a literal reading of § 1111 and Bankruptcy Rule 3003 may lead to this conclusion, upholding Dilkes' claim on this ground would set a bad precedent. Any scheduled creditor could then plead equity to the bankruptcy court to allow a greater claim than that which is scheduled. The finality of setting a bar date in this situation would be undermined. Therefore, the court declines to find that her claim was an amendment, but rather supports its decision under the bankruptcy court's finding of excusable neglect.

### III. CONCLUSION

The bankruptcy court did not abuse its discretion in allowing appellee's late filed claim, and therefore the order is AFFIRMED.

SO ORDERED.