**In re Joe Michael POOR, Linda L. Poor, Debtor.**

**Bankruptcy No. 89–00823.**

United States Bankruptcy Court, M.D. Louisiana.

June 14, 1991.

---

Joseph H. LeBeau, III, Baton Rouge, La., for debtor.

Joan B. Parmelee, Baton Rouge, La., trustee.

## REASONS FOR DECISION

LOUIS M. PHILLIPS, Bankruptcy Judge.

This matter was before the Court on the debtors' Objection to Trustee's Proposed Disbursements and Motion to Permit Filing of Proof of Claim (the debtors' motion), whereby the debtors requested: (1) denial of the trustee's proposed final account; (2) authority to file proofs of claim for income tax due on behalf of the United States (Internal Revenue Service) and the State of Louisiana (Department of Revenue & Taxation); and (3) that the trustee reformulate the proposed final account in order to allocate estate funds toward the payment of the tax authorities' proofs of claim according to the priority afforded by 11 U.S.C. § 507.

For reasons set forth below the Court has dismissed the debtors' objection to the trustee's proposed final account and has denied the motion to permit the filing of proofs of claim on behalf of the IRS and State of Louisiana and the motion to require reformulation of the trustee's final account.

### Jurisdiction of the Court

This is a proceeding arising under Title 11 of the United States Code. The United States District Court for the Middle District of Louisiana has original jurisdiction pursuant to 28 U.S.C. § 1334(b). By Local Rule 22M of the Uniform Local Rules of the United States District Courts for the Eastern, Middle and Western Districts of Louisiana, under the authority of 28 U.S.C. § 157(a), the United States District Court for the Middle District of Louisiana referred all such cases to the Bankruptcy Judge for the district and ordered the Bankruptcy Judge to exercise all authority permitted by 28 U.S.C. § 157.

This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A). Pursuant to 28 U.S.C. § 157(b)(1) and the general reference by the District Court, the Bankruptcy Judge for this district may hear and determine all core proceedings arising under Title 11 or in a case under Title 11 and may enter appropriate orders and judgments thereupon.

No party has objected to the exercise of jurisdiction by the Bankruptcy Judge. No party has filed a motion for discretionary

abstention pursuant to 28 U.S.C. § 1334(c)(1) or pursuant to 11 U.S.C. § 305. No party filed a timely motion for mandatory abstention under 28 U.S.C. § 1334(c)(2). No party has filed a motion under 28 U.S.C. § 157(d) to withdraw all or part of the case or any proceeding thereunder, and the District Court has not done so on its own motion.

## Background

This bankruptcy case was filed on June 29, 1989. The Section 341(a) meeting of creditors, by notice issued on July 12, 1989 to all creditors and parties in interest listed on the official mailing matrix by the Office of the Clerk of this Court, was scheduled to (and did in fact) take place on August 3, 1989. The notice advised all creditors and parties in interest of the deadline for filing proofs of claim pursuant to Rule 3002(c).[1] Pursuant to Bankruptcy Rule 3002 the claims bar date was November 1, 1989. The debtors' original schedules, filed July 14, 1989, list claims owing the Internal Revenue Service and the Louisiana Department of Revenue as "unknown" and "$150.00", respectively. On August 25, 1989 the debtors filed amendments to their schedules showing, inter alia, "income taxes owing to the United States of Eight Thousand One Hundred Fifty–Seven and 56/100 ($8,156.56) Dollars and income taxes owing to the State of Louisiana of Four Hundred Sixty–Seven and 00/100 ($467.00) Dollars." Both taxing authorities were listed (at proper addresses) upon the original mailing matrix used by the Office of the Clerk of Court in the transmission of the notice of the Section 341(a) meeting of

creditors, are presumed to have received notice of the claims bar date, and in fact received notice of the amended schedules.

Neither taxing authority filed a proof of claim prior to the submission of the trustee's proposed final account (notice of which was filed March 23, 1990). On April 20, 1990, some One Hundred Forty (140) days after the expiration of the Bankruptcy Rule 3004 deadline for filing claims on behalf of creditors (by the debtor or trustee) the debtors moved the Court for permission to file proofs of claim on behalf of the taxing authorities, submitted an objection to the trustee's proposed final account, and requested that the final account be reformulated on account of the priority claims of the taxing authorities.

## Discussion

Most unfortunately, the trustee in this case offered no objection to the debtors' motion, notwithstanding the filing of the motion some one hundred forty (140) days after the deadline for filing claims under Rule 3004, and notwithstanding the fact that the proofs of claim sought to be filed would have absorbed all estate funds earmarked for payment to unsecured creditors.[2] Whether they know it or not, the unsecured creditors of bankruptcy estates have the right (afforded by the Bankruptcy Code, see Section 704(5)) to rely upon the trustee to act on their behalf. Where the trustee, for whatever reason, deigns to act responsibly (or to act at all) it befalls this Court to determine whether the debtors have established a right to the relief requested.[3]

---

1. The "no asset, do not file claims" form of notice has purposefully *not* been adopted in this district.

2. The trustee in this case has offered no response to the debtors' motion, the thought being, apparently, that a claimant is a claimant for purposes of determining the trustee's commission—always requested, of course, at the maximum level. The Court notes that the final account proposed to pay $7,164.84 to unsecured creditors.

3. Through memorandum, counsel for the debtors point out that no creditors objected to the relief requested. As mentioned, the unsecured

creditors have a right to rely upon the trustee to carry out her fiduciary duty. Also, though the creditors received notice, the notices provide with respect to the substance of the objection and motion, only that "on the 9th day of April, 1990, debtors Joe Michael Poor and Linda L. Poor, filed an *objection to Trustee's Proposed Disbursements* ...", and that "on the 9th day of April, 1990, debtors Joe Michael Poor and Linda L. Poor, filed a Motion to Permit Filing of Proof of Claim ..." Unlike the trustee, who received copies of the objection, motion and all memoranda, the creditors and parties in interest received only the notices of hearing.

The debtors, through their motion and original supporting research, assert as their primary argument that scheduling the particular IRS and state tax claims through the August 25, 1989 amendments constitutes a timely filed "informal proof of claim which may be formally amended following the bar date" and that the formal proofs of claim proposed by the debtors constitute amendments which relate back to the timely filed "informal" proofs of claim. The Court at argument on the debtors' motion dismissed this "amendment argument," for oral reasons assigned, ruling that scheduling debts through an amendment of schedules prior to the claims bar date does not constitute the filing of informal proofs of claim to which subsequent formal proofs of claim can relate as amendments. The scheduling of claims within a Chapter 7 case does not constitute the filing of claims (formal or informal) pursuant to 11 U.S.C. § 501, otherwise there would be no claims deadline (all subsequently filed proofs of claim relating back to the informal, scheduled claims), and the Bankruptcy Rule requiring the filing of proofs of claim in Chapter 7 cases (Rule 3002) would have no meaning. Rather, the Court determined that the tax claims could not be filed without a court ordered extension of the claims bar date.

The Court suggested that extension of the bar date could only be authorized upon the debtors' establishing excusable neglect as the reason for their failure to file a timely claim on behalf of the IRS and State of Louisiana pursuant to Rule 3004. Counsel for the debtors was allowed the opportunity to brief the issue of excusable neglect.

The debtors' supplemental memorandum was received and contains an extended factual narrative in support of a finding of excusable neglect. The Court accepts the factual assertions within the memorandum as true for purposes of this opinion.[4]

The bar date for claims in this Chapter 7 case was fixed pursuant to Rule 3002, which requires that claims be filed "within ninety (90) days after the first date set for the meeting of creditors called pursuant to Section 341(a) of the Code, ..." Rule 3002(c). Rule 3002(c) contains specific exceptions to this 90–day deadline, none of which are applicable to the proceedings before the Court.[5] Because neither of the taxing authorities filed claims on their own behalf, the debtors attempted to file claims for them, pursuant to Rule 3004. Rule 3004 provides:

If a creditor fails to file a proof of claim on or before the first date set for the meeting of creditors called pursuant to § 341(a) of the Code, the debtor or trustee may do so in the name of the creditor, *within 30 days after expiration of the*

---

4. As the trustee filed no objection and did not appear at hearing it must have seemed to her quite logical that she dispense with briefing her position.

5. The exceptions are:

(1) On motion of the United States, a state, or subdivision thereof before the expiration of such period and for cause shown, the court may extend the time for filing of a claim by the United States, a state, or subdivision thereof.

(2) In the interest of justice and if it will not unduly delay the administration of the case, the court may extend the time for filing a proof of claim by an infant or incompetent person or the representative of either.

(3) An unsecured claim which arises in favor of an entity or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property. If the judg-

ment imposes a liability which is not satisfied, or a duty which is not performed within such period or such further time as the court may permit, the claim shall not be allowed.

(4) A claim arising from the rejection of an executory contract of the debtor may be filed within such time as the court may direct.

(5) If notice of insufficient assets to pay a dividend was given to creditors pursuant to Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall notify the creditors of that fact and that they may file proofs of claim within 90 days after the mailing of the notice.

(6) In a chapter 7 liquidation case, if a surplus remains after all claims allowed have been paid in full, the court may grant an extension of time for the filing of claims against the surplus not filed within the time hereinabove prescribed.

*time for filing claims prescribed by Rule 3002(c) or 3003(c), whichever is applicable.* The clerk shall forthwith mail notice of the filing to the creditor, the debtor and trustee. A proof of claim filed by a creditor pursuant to Rule 3002 or Rule 3003(c), shall supersede the proof filed by the debtor or trustee.[6] [emphasis added.]

The debtors' motion was filed outside the time period afforded by Rule 3004. As Rule 3004 does not provide for extending the bar date, requests for extension of the Rule 3004 time period are governed by Rule 9006(b)(1), which reads:

(1) *In General.* Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) *on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.*[7] [emphasis added.]

Therefore, while the motion may be filed after the time period has elapsed, the court can only grant an extension if the *failure to act* (in this matter, to file a claim timely on behalf of the taxing authorities) was the result of excusable neglect. Before delving into the definition and interpretation of the term "excusable neglect" and the question of whether grounds exist to extend the applicable bar date in this proceeding, a brief introduction to the case law may be helpful.

Most of the jurisprudence which discusses "excusable neglect" emanates from Chapter 11 cases where creditors have requested extensions of the Rule 3003(c) claims bar dates by motions filed after the expiration of the deadlines.

There is presently a conflict within the Chapter 11 jurisprudence concerning the extent to which Rule 9006(b)(1) controls extension of Rule 3003(c) bar dates. Rule 3003(c)(3) governs the deadline for filing claims in a Chapter 11 case and provides, "The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." The lack of distinction between pre- and post-bar date motions has led certain courts to conclude that Rule 3003(c)(3) authorizes the court to determine "cause" unfettered by Rule 9006(b)(1) and its apparent requirement that "cause" in terms of post-deadline motions is limited to circumstances amounting to excusable neglect.[8]

---

**6.** As this bankruptcy case was filed in 1989, the debtors are governed by the provisions of Rule 3004, as amended in 1987. Prior to August 1, 1987, the effective date of the 1987 amendment to Rule 3004, the Rule did not contain a claims deadline, but read:

> **Rule 3004.** Filing of Claims by Debtor or Trustee
> If a creditor fails to file a proof of claim on or before the first date set for the meeting of creditors called pursuant to § 341(a) of the Code, the debtor or trustee may do so in the name of the creditor. The clerk shall forthwith mail notice of the filing to the creditor, the debtor and the trustee. The creditor may thereafter file a proof of claim pursuant to Rule 3002 or Rule 3003, which proof when filed shall supersede the proof filed by the debtor or trustee.

**7.** The remaining provisions of Rule 9006, dealing with enlargement of time refer to specific time periods deemed by Subdivisions (b)(2) and (3) to be more sacrosanct, do not refer to the deadline fixed by Rule 3004. These subdivisions provide:

> (2) *Enlargement Not Permitted.* The court may not enlarge the time for taking action under Rules 1007(d), 1017(b)(3), 1019(2), 2003(a) and (d), 7052, 9015(f), 9023, and 9024.
> (3) *Enlargement Limited.* The court may enlarge the time for taking action under Rules 1006(b)(2), 3002(c), 4003(b), 4004(a), 4007(c), 8002, and 9033, only to the extent and under the conditions stated in those rules.

**8.** *In re Terex Corp.,* 45 B.R. 290, 292 (Bankr.N.D. Ohio 1985) (holding that Rule 9006 is the general time computation rule, must yield to the provisions of Rule 3003(c) governing Chapter 11 claims and therefore that the court has broader discretion to extend Chapter 11 claims deadlines than is provided by Rule 9006(b); *In re Hudson Oil Co., Inc.,* 100 B.R. 72, 78 (Bankr.D.Kan.1989) (referring to several factors suggested by *Colliers,* 3003.05[4] at 3003–11, 12 (15th Ed.1989) as

The other line of jurisprudence concludes that Rule 3003(c)(3) must be read in conjunction with Rule 9006(b)(1); and that "cause," in situations involving post-bar date motions for extension, is limited to circumstances constituting excusable neglect.[9]

Resolution of this conflict is not grist for this opinion. As mentioned, the Rule 3004 deadline in this Chapter 7 case hinges upon the original claims bar date fixed by Rule 3002(c) (which contains the only exceptions, as is made clear by Rule 9006(b)(3)). Rather, the Court notes the divergent views for the purpose of making clear that the following analysis is limited to Rule 9006(b)(1) and interpretation of the term "excusable neglect." Therefore, to the extent the Court refers to decisions emanating from Chapter 11 proceedings, the discussion will be limited to cases which read Rule 3003(c) in conjunction with Rule 9006(b)(1), and condition the extension of Rule 3003(c) deadlines (when the requests are made after the expiration date) upon a finding that the failure to act was caused by "excusable neglect."

■ The term "excusable neglect", a term of art that is not defined in the Bankruptcy Code or the Bankruptcy Rules, is generally defined and interpreted as "the failure to timely perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform." *Hanson v. First Bank of South Dakota*, 828 F.2d 1310, 1314 (8th Cir.1987), citing *In re Carlton*, 72 B.R. 543, 546 (Bankr.E.D.N.Y.1987), citing *In re*

*Manning*, 4 BCD 304, 305 (Bankr.D.Conn. 1978); *In re South Atlantic Financial Corporation*, 767 F.2d 814, 817 (11th Cir. 1985) *cert. denied* 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986), citing *In re Gem Rail Corporation*, 12 B.R. 929, 931 (Bankr.E.D.Pa.1981), See also *In re Analytical Systems, Inc.*, 113 B.R. 91 (N.D. Ga.1990); *In re Nutri*Bevco, Inc.*, 117 B.R. 771 (Bankr.S.D.N.Y.1990); *In re Charter Company*, 113 B.R. 725 (M.D.Fla. 1990); *Matter of Dewey Beach Enterprises, Inc.*, 110 B.R. 681 (Bankr.D.Del.1990); *In re Davis*, 108 B.R. 95, 99 (Bankr.D.Md. 1989); *In re Chateaugay Corp.*, 104 B.R. 617, 619 (Bankr.S.D.N.Y.1989); *In re Somar Concrete, Inc.*, 102 B.R. 44, 48 (Bankr.D.Md.1989); *In re First Software Corp.*, 97 B.R. 711 (D.Mass.1988); *In re Sasson Jeans*, 96 B.R. 457 (Bankr.S.D.N.Y. 1989); *In re STN Enterprises, Inc.*, 94 B.R. 329 (Bankr.D.Vt.1988).

The moving party has the burden of establishing that the failure to act timely resulted from excusable neglect. See cases cited above.

At first blush it might seem that fashioning an analysis of whether a particular set of circumstances constitutes "excusable neglect" would not be an overly taxing endeavor. However, though the case law uniformly posits the question of whether the "failure to timely perform a duty was beyond the reasonable control of the person whose duty it was to perform," there are two divergent approaches to finding the answer.

forming the proper analysis of "cause" under Rule 3003(c)(3) and wherein it is also suggested that "the test of the creditor's conduct may not give the court sufficient discretion in every case to determine whether an extension of the bar date should be granted retroactively"); *In re Pettibone Corp.*, 110 B.R. 837, 843 (Bankr.N.D. Ill.1990); *In re Pettibone Corp.*, 123 B.R. 304, 309 (Bankr.N.D.Ill.1990) (both *Pettibone* cases contain the same analysis and assertions, including that the "significance of incorporating Rule 9006 into the Rule 3003(c)(3) analysis is its impact on the weight, if any, to be given to 'prejudice' as a factor to consider in assessing whether a late claim should be permitted."); See also *In re Herd*, 840 F.2d 757, 758 at ftnt 2 (10th Cir.1988) (wherein the court notes the

conflict discussed here and appears to embrace a "cause" analysis of broader scope than it suggests is allowed under Rule 9006(b)(1).

9. *In re Vertientes Ltd.*, 845 F.2d 57, 59 (3rd Cir.1988); *In re South Atlantic Financial Corporation*, 767 F.2d 814, 817 (11th Cir.1985) *cert. denied* 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986); see also, for example, *In re Charter*, 113 B.R. 725 (M.D.Fla.1990); *In re Analytical Systems, Inc.*, 113 B.R. 91 (N.D.Ga.1990); *Wright v. Placid Oil*, 107 B.R. 104, 106 (D.C.N.D. Tex.1989); *In re Sharon Steel Corp.*, 110 B.R. 205 (Bankr.W.D.Pa.1990); *In re Chateaugay Corp.*, 104 B.R. 617, 619 (Bankr.S.D.N.Y.1989); *In re Heater Corp. of the Americas, Inc.*, 97 B.R. 657 (Bankr.S.D.Fla.1989).

One analytical avenue has constructed a set of factors to consider. Generally the factors considered are

(1) whether the moving party had adequate notice of the applicable bar date;

(2) the cause or source of delay (and in certain instances the sophistication of the creditors); and

(3) *the extent* to which the debtor and other parties *will* be prejudiced by the late filed claim.

*In re Nutri\*Bevco, Inc.*, 117 B.R. 771, 785 (Bankr.S.D.N.Y.1990);[10] *Wright v. Placid Oil*, 107 B.R. 104, 106 (D.C.N.D.Tex. 1989) (adding such factors as "length of delay" and "good faith of creditors"); *In re Sharon Steel Corp.*, 110 B.R. 205, 207; *In re Hudson Oil Co., Inc.*, 100 B.R. 72 (Bankr.D.Kan.1989); *In re Chateaugay Corp.*, 104 B.R. 617, 619–620; *In re Sasson Jeans, Inc.*, 96 B.R. 457, 460; *In re First Software Corp.*, 97 B.R. 711, 716 (adding as a factor whether the moving party was misled).[11]

The second approach, represented by *In re South Atlantic Financial Corporation,* determines the existence of excusable neglect without consideration of factors such as prejudice to or effect upon parties in interest and without regard to equitable considerations. In response to the moving party's arguments that a finding of excusable neglect was warranted because a late claim would not adversely affect any party in the Chapter 11 case, the Eleventh Circuit stated that effect upon parties is not relevant to excusable neglect inquiry, under either FRCvP 6(b)(2) or Bankruptcy Rule 9006(b).

Moreover, we believe that such a construction would do violence to the plain meaning of the language of both Rule 9006(b) and FRCvP 6(b)(2). Both rules extend the time for the doing of an act where 'the failure to act was the result of excusable neglect.' It is clear from this language that the focus of these Rules is on the movant's actions and the reasons for those actions, not on the effect that an extension might have on the other parties' positions. Id. at 818, 819.

See *In re Analytical Systems, Inc.*, 113 B.R. at 93 ("prejudice to other creditors is not a relevant inquiry"); *Matter of Dewey Beach Enterprises, Inc.*, 110 B.R. at 685; *In re Somar Concrete, Inc.*, 102 B.R. at 46; *In re AMWC, Inc.*, 109 B.R. 210 (Bankr.N.D.Tex.1989) (citing the *South Atlantic* standard and asserting "deciding whether failure to file a claim was truly beyond the control of the responsible party is a fact specific determination"; *In re STN Enterprises, Inc.*, 94 B.R. 329, 333 ("the mover will always be prejudiced if the claim is not filed because a 'no claim' status in an asset bankruptcy case will always result in no dividend to the movant."); *Matter of Century Brass Products, Inc.* 72 B.R. 68, 70 (Bankr.D.Conn.1987).

This Court adopts the *South Atlantic* approach. Inquiry into the effects upon or prejudice to the parties serves no analytical purpose when the question to be resolved requires that the focus be upon cause (and not effect), and turns the present definition of "excusable neglect" on its head.

Where a court has determined that the moving party *cannot show* that circumstances beyond his reasonable control caused the failure to act, prejudice to the parties as a factor will function to convince the court to allow the action upon a finding of excusable neglect because no party is unduly prejudiced. On the other hand, where the mover *has established* that the circumstances causing the failure to act were outside his reasonable control, use of prejudice to the parties as a factor will function to supplant this finding with a finding that notwithstanding the existence of excuse, prejudice to the parties will be

**10.** Though the *Nutri\*Bevco, Inc.* opinion discusses "cause", in general the major focus of the opinion is a separate analysis of excusable neglect.

**11.** The *First Software Corp.* case is an example of how "factoring" can evolve into an end unto itself. The opinion also considers as *a factor* whether the delay is caused by circumstances beyond the creditor's reasonable control—the ultimate question to be answered, not a factor to consider in getting there.

so great that the action cannot be allowed (neglect is inexcusable).

Consideration of the *effects* of a failure to act upon the parties as a factor, therefore, transmutes the presently accepted definition of excusable neglect to require courts to ask one of two additional questions:

*though* the failure to timely perform a duty *was not* beyond the reasonable control of the person whose duty it was to perform, should the action be allowed because *no party will be unduly hurt or prejudiced?*

or

*though* the failure to timely perform a duty *was* beyond the reasonable control of the person whose duty it was to per-form should the action be prohibited because prejudice that would result from allowing the action would be undue.[12]

■ In summation, if the relevant circumstances *do not establish* that the cause of the failure to act are beyond the reasonable control of the mover, excusable neglect is not shown and no further inquiry need be undertaken. If they do, there likewise need be no further inquiry because excusable neglect is established. "Excusable neglect" is a realm wherein equitable weighing of effects simply has no place. Rather the analysis must proceed on a case-by-case dissection of the facts surrounding the movant's actions and the reasons for the failure to act.

■ So, what about excusable neglect in this case?[13] The debtors' memorandum recites several matters which took up counsel time, and which combined to create the circumstances resulting in the late claims. The debtors apparently worked with the trustee to prepare tax returns for 1987 and 1988. Debtors' counsel apparently worked with the trustee regarding an avoidance action under Section 547 against a bank creditor of the estate. Debtors and counsel were involved in valuation of property of the estate, exemption determinations and negotiations with the trustee which resulted in the debtors' purchase of estate property for the cash price to the trustee of $1,262.00. Also, counsel and the debtors were involved in a dischargeability complaint grounded in alleged fraudulent credit card purchases.

The trustee was aware of the tax liability and received copies of the tax returns, but through some misunderstanding and confusion the tax returns showing pre-petition liability were apparently never forwarded by the debtors to their counsel. (Though Rule 3004 allows the filing of claims by a trustee, it is clearly the debtors who stand to benefit if a goodly portion of their non-dischargeable tax liability is paid out of the estate.)

While it does appear that counsel and the debtors were quite occupied on various Chapter 7 fronts during the time prior to expiration of the Rule 3004 bar date, the bedrock facts are as follows:

(1) The debtors' pre-petition tax liability was finalized some eighty-five (85) days prior to the November 1, 1989 deadline; and

---

12. What does "undue" mean? The vagaries of the process of "equitable" weighing of relative prejudice are present here. If the proofs of claim are allowed, all estate funds presently earmarked for unsecured creditors are absorbed by the tax claims. Of course, this appears immensely prejudicial. However, the proposed distribution to unsecured creditors amounts to a mere one-half of one percent of the total unsecured claims. From the "prejudice perspective," where does a court draw the line? Is there an analytical difference between reducing a distribution from 82.5% to 82% (does not look too prejudicial) and reducing a distribution from .5% to 0.0% (the same reduction but the creditors are losing everything). If so, the dis-

tinction cannot be explained in terms of excusable neglect.

13. The factors most widely relied upon by courts as grounds for a finding of excusable neglect—lack of timely notice or improper notice of the applicable bar date—will rarely, if ever, be applicable to the bar date established by Rule 3004, as the deadline applies to the party who initiated the case (debtor) and the party in charge of administration of the case (trustee). Therefore, the analysis must focus upon the general circumstances surrounding the failure to act, all parties firmly possessed of proper notice.

(2) The amended schedules detailing the tax claims were filed some sixty-five (65) days before the deadline.

Upon these two facts, and this Court's conclusion that the matters described within the debtors' memorandum constitute the ordinary tasks and duties that routinely occupy debtors and counsel in Chapter 7 "asset cases," the Court finds that the failure by the debtors to file claims on behalf of the taxing authorities was not caused by circumstances beyond the reasonable control of the debtors or counsel and therefore was not grounded in excusable neglect.[14]

For the foregoing reasons a separate Order has been entered denying the debtors' motion to file claims on behalf of the taxing authorities, and request to have the trustee's final account reformulated on the basis of the proposed claims, and dismissing the debtors' objection to the trustee's final account.

### The Trustee and Final Account

The Court has dismissed the debtors' objection to the final account, but approval of the proposed account is not the corollary. The Court has no qualms about the proposed distribution other than of the compensation in the amount of Four Hundred Nine and 86/00 Dollars ($409.86) requested by the trustee pursuant to 11 U.S.C. § 326.

As has been mentioned, the trustee filed no opposition to the debtors' motion and did not appear at hearing; she took no interest in the proceeding despite the fact that approval of the debtors' requests would have resulted in no distribution to those creditors who timely filed claims. One might suppose that the thought processes included, "a claim is a claim for compensation purposes"; or perhaps, "two claims are better than twelve when you're the one mailing the checks"; or perhaps, "if someone cares, they'll call me." The Court can only suppose.

The trustee's failure to object or appear constitutes a breach of her fiduciary duty to this estate which renders the notion of compensation inconceivable. The Court will issue a separate Order denying the requested compensation, will require a recalculation of the distribution to unsecured creditors and submission of an amended final account within ten (10) days after entry of the Order.

---

14. For another case reaching the same conclusion upon closely aligned facts, attention is directed to *In re Davis*, 108 B.R. 95 (Bankr.D.Md. 1989) (where the court was faced with a post claims deadline motion by the debtors to file an untimely claim on behalf of the IRS on the basis of excusable neglect).