TJOFLAT, Circuit Judge:
 

 This is an appeal by a creditor in a Chapter 11 bankruptcy proceeding challenging an order of the bankruptcy court, affirmed by the district court, precluding it from filing a proof of claim after the time fixed for the filing of proofs of claims had passed. We find no error and affirm.
 

 I.
 

 In 1979, the creditor, Biscayne 21 Condominium, Inc. (Biscayne), a condominium association, purchased a residential condominium, known as Biscayne 21, from the debt- or, South Atlantic Financial Corporation (SAFCO), a Florida corporation engaged in real estate development. In 1981, Biscayne filed suit against SAFCO in the Florida circuit court alleging that SAFCO had breached its sales agreement with Biscayne by misrepresenting the condition of the condominium and by failing to make certain repairs to it. This litigation was pending when SAFCO filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Reform Act of 1978 (the Bankruptcy Code) in the Southern District of Florida and was stayed on October 13, 1982.
 

 In December of 1982, SAFCO filed a schedule of claims and statement of financial affairs in the bankruptcy court, pursuant to Interim Bankruptcy Rule 1007(b).
 
 [1]
 
 In that schedule, SAFCO listed Biscayne as a “disputed” creditor. On June 22, 1983, the bankruptcy court set August 4, 1983, as the last day (“bar date”) for creditors whom SAFCO had listed in its schedule as disputed, contingent, or unliquidated to file proofs of claim. Biscayne received a copy of this order but did not file a proof of claim before the bar date. Biscayne’s attorney did, however, file a notice of appearance on July 1, 1983, in which she requested the court to forward her copies of all future pleadings and orders filed in the case.
 

 On August 18, 1983, SAFCO requested the bankruptcy court to estimate certain contingent or unliquidated claims pursuant to section 502(c) of the Bankruptcy Code. 11 U.S.C. § 502(c) (1982).
 
 [2]
 
 Because Bis
 
 *816
 
 cayne had not submitted a proof of claim by the bar date, SAFCO did not request the court to estimate its claim. Upon receiving a copy of SAFCO’s pleading, Biscayne’s counsel apparently became aware that Biscayne had failed to submit a proof of claim, and, on August 22, counsel requested the bankruptcy court to allow Biscayne to file an untimely proof of claim.
 

 The court heard Biscayne’s request on August 31. At that hearing, Biscayne’s counsel readily admitted that her client had failed to submit a timely proof of claim solely because of her error: she explained that Biscayne had employed her after the Chapter 11 proceeding began and it was her impression that its previous attorney had filed a proof of claim.
 
 [3]
 
 The court concluded that counsel’s error in assuming that her predecessor had filed a proof of claim in behalf of Biscayne did not constitute “excusable neglect,” and it denied Biscayne’s request to file an untimely proof. The court, however, explored the possibility of whether Biscayne had done anything in the reorganization proceeding that could be treated as the filing of an informal proof of claim; if so, the court could consider Biscayne’s request as a motion to amend such proof of claim. After entertaining argument of counsel on this point, the court concluded that Biscayne’s only prior activity in the case, the appearance of its attorney, could not be considered an informal proof of claim and that Biscayne’s claim had been foreclosed. On September 21, Biscayne moved the court to reconsider its ruling and to stay the Chapter 11 proceeding in the interim. This motion was denied on October 18.
 

 On October 26, Biscayne appealed the bankruptcy court’s September 1 and October 18 orders.
 
 [4]
 
 Thereafter, it moved the district court to stay the Chapter 11 proceeding in. the bankruptcy court pending its disposition of Biscayne’s appeal. Following a hearing, the district court entered an order, dated February 8, 1984, affirming the bankruptcy court’s orders and denying
 
 *817
 
 Biscayne’s requested stay. This appeal followed.
 

 II.
 

 A.
 

 Under Chapter 11 of the Bankruptcy Code only certain claimants are required to file proofs of claim in order to participate in a reorganization. Section 1111(a) of the Code, 11 U.S.C. § 1111(a) (1982), provides that all claims listed by a debtor in its schedule of claims are deemed to be filed unless the debtor lists a claim as “disputed, contingent, or unliquidated.” Because • SAFCO listed Biscayne’s claim as disputed, Biscayne was required to file a proof of claim by the bar date; otherwise, it would be forever foreclosed from participating in SAFCO's reorganization.
 

 Although the Bankruptcy Code informs us as to which creditors must file proofs of claim in order to participate in a reorganization, it is silent as to the time within which claims must be filed. This subject is covered by the Bankruptcy Rules.
 
 [5]
 
 Rule 3003(c)(3), which governs the time for filing claims in Chapters 9 and 11 cases, provides that “[t]he court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed.” The bankruptcy court here fixed August 4, 1983, as the time by which proofs of claim were required to be filed in SAFCO’s reorganization. Because Biscayne failed to file a proof of claim by that time, it was barred from participating in SAFCO’s reorganization unless it could establish sufficient grounds for the filing of a late proof of claim.
 

 Rule 3003(c)(3) authorizes the court to extend the time for the filing of a proof of claim for “cause shown.” This rule must be read, however, in conjunction with Rule 9006(b).
 
 See In re O.P.M. Leasing Services, Inc.,
 
 35 B.R. 854, 864 (Bankr.S.D.N.Y.1983); cf
 
 . In re Magouirk,
 
 693 F.2d 948, 950 (9th Cir.1982). Rule 9006(b) provides:
 

 when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court
 
 for cause shown
 
 may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of
 
 excusable neglect.
 

 (Emphasis added.) Rule 9006(b) makes it clear that, when a party moves for an extension of time
 
 after
 
 the expiration of the time period, it must show that its failure to act before the court’s deadline was the result of excusable neglect.
 

 Courts have interpreted “excusable neglect” under Rule 9006(b) and its identically worded predecessor, Rule 906(b), as requiring the movant to show that
 
 “
 
 ‘the failure to timely perform a duty was due to circumstances which were beyond the reasonable control of the person whose duty it was to perform.' ”
 
 In re Gem Rail Corp.,
 
 12 B.R. 929, 931 (Bankr.E.D.Pa.1981) (quoting
 
 In re Manning,
 
 4 B.C.D. 304, 305 (D.Conn.1978)). Thus, in
 
 In re Underground Utility Construction Co.,
 
 35 B.R. 588 (Bankr.S.D.Fla.1983), the court held that a creditor had failed to show “excusable neglect” for filing his claim three days after the bar date where the untimely filing was the result of his failure to mail his claim to the proper address. Similarly, in
 
 In re Oakton Beach & Tennis Club Real Estate Limited Partnership,
 
 9 B.R. 201 (Bankr.E.D.Wisc.1981), the court held that counsel’s reliance on misinformation from a bankruptcy court clerk regarding his duty to file a proof of claim did not amount to excusable neglect;
 
 see also In re Horn Construction & Maintenance, Inc.,
 
 32 B.R. 87 (Bankr.S.D.Ala.1983), (“misunder
 
 *818
 
 standing” between a creditor and its lawyers which caused its late filing of a proof of claim did not amount to “excusable neglect.”);
 
 In re Gem Rail Corp.,
 
 12 B.R. 929, 931 (Bankr.E.D.Pa.1981) (creditor’s failure to obtain records with which to file timely proof of claim was not excusable neglect where there was no showing by creditor that records could not easily have been obtained). Courts have been most willing to find excusable neglect where the movant failed to comply with the bar date because, through no fault of its own, it had no notice of that date.
 
 See, e.g., In re Loveridge,
 
 2 B.C.D. 1597 (Bankr.D.Conn.1977).
 

 Although this circuit has not had occasion to construe excusable neglect under either Rule 9006(b)(1) or Rule 906(b), the definition of excusable neglect employed by the courts cited above comports with this circuit’s construction of excusable neglect under Fed.R.Civ.P. 6(b)(2), from which Rule 9006(b) and Rule 906(b) are derived.
 
 See
 
 Fed.R.Bankr.P. 9006 advisory committee note. For instance, in
 
 McLaughlin v. City of LaGrange,
 
 662 F.2d 1385, 1387-88 (11th Cir.1981),
 
 cert. denied,
 
 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982), we held that the appellant had not demonstrated “excusable neglect” for failing to respond in a timely manner to a summary judgment motion when his only excuse for failing to do so was that his attorney was a solo practitioner with a busy schedule.
 
 See also Beaufort Concrete Co. v. Atlantic States Construction Co.,
 
 352 F.2d 460, 463 (5th Cir.1965)
 
 [6]
 
 (district court did not abuse its discretion in finding no excusable neglect where party offered
 
 no
 
 excuse for its failure to comply with time requirement of Fed.R.Civ.P. 56(c)),
 
 cert. denied,
 
 384 U.S. 1004, 86 S.Ct. 1908, 16 L.Ed.2d 1018 (1966).
 
 Accord Graham v. Pennsylvania Railroad,
 
 342 F.2d 914, 915 (D.C.Cir.1964) (counsel’s unfamiliarity with new rule of civil procedure did not constitute excusable neglect),
 
 cert. denied,
 
 381 U.S. 904, 85 S.Ct. 1446, 14 L.Ed.2d 286 (1965);
 
 Sherrod v. Piedmont Aviation, Inc.,
 
 516 F.Supp. 39, 41 n. 1 (E.D.Tenn.1978) (excusable neglect not established where failure to act was due to “simple inadvertence or ... mistake regarding the content of the rules or unfamiliarity with them”).
 

 Biscayne acknowledges that its failure to file a timely proof of claim was not the result of anything beyond its reasonable control, such as lack of notice of the bar date, but was the result of its counsel’s failure accurately to determine whether a proof of claim had already been filed, a fact she could easily have verified by an examination of the bankruptcy court records. Biscayne contends, nevertheless, that the bankruptcy court abused its discretion when it failed to find “excusable neglect” and allow Biscayne to file a late proof of claim, because such would not have prejudiced any of the other parties participating in SAFCO’s reorganization. Whether a late filing by Biscayne would have prejudiced SAF'CO, its shareholders, or other creditors was not, however, a relevant inquiry for the courts below. Although some courts have examined the prejudicial effect of a late filing in determining whether excusable neglect exists,
 
 see, e.g., In re O.P.M. Leasing Services, Inc.,
 
 35 B.R. 854, 866 (Bankr.S.D.N.Y.1983) (construing excusable neglect under Rule 9006(b)(2));
 
 In re Four Seasons Securities Laws Litigation,
 
 493 F.2d 1288, 1290-91 (10th Cir.1974) (construing excusable neglect under Fed.R.Civ.P. 6(b)(2)), this circuit, as we have noted above, has not done so when applying Fed.R.Civ.P. 6(b)(2); and Biscayne has given us no reason why we should construe excusable neglect under Rule 9006(b) any differently. Moreover, we believe that such a construction would do violence to the plain meaning of the language of both Rule 9006(b) and Fed.R.Civ.P. 6(b)(2). Both rules extend the time for the doing of an act where
 
 “the failure to act
 
 was the result of excusable neglect.”
 
 *819
 
 It is clear from this language that the focus of these rules is on the movant’s actions and the reasons for those actions, not on the effect that an extension might have on the other parties’ positions. Therefore, because Biscayne failed to advance any reason for failing to comply with the August 4 bar date that was not within its reasonable control, we hold that the bankruptcy court did not abuse its discretion in refusing to allow Biscayne to file a proof of claim eighteen days after the bar date. We turn then to whether the bankruptcy court erred in refusing to allow Biscayne to file an amended proof of claim at that time.
 

 B.
 

 It is well established that a creditor need not timely file a letter perfect proof of claim before the expiration of the time fixed by the court for the filing of such and that “in a bankruptcy case, amendment to a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim.”
 
 In re International Horizons, Inc.,
 
 751 F.2d 1213, 1216 (11th Cir.1985).
 
 See In re Commonwealth Corp.,
 
 617 F.2d 415, 420-21 (5th Cir.1980);
 
 In re Imperial Sheet Metal, Inc.,
 
 352 F.Supp. 1149, 1154-55 (M.D.La.1973). Before a court will allow a party to file an amended proof of claim, however, there must be something filed in the bankruptcy court capable of being amended.
 
 In re International Horizons, Inc.,
 
 751 F.2d at 1217;
 
 In re Sems Music Co.,
 
 24 B.R. 376, 380 (Bankr.M.D.Tenn.1982). Thus, courts have held that knowledge by the debtor of the creditor’s claim, standing alone, will not be a sufficient basis upon which to allow the filing of an amended claim.
 
 In re International Horizons, Inc.,
 
 751 F.2d at 1217;
 
 Wilkens v. Simon Brothers, Inc.,
 
 731 F.2d 462, 465 (7th Cir.1984). The mere filing of a document in the bankruptcy court prior to the bar date will not, however, necessarily suffice as an informal proof of claim capable of amendment. To constitute an informal proof of claim, the document must apprise the court of the existence, nature, and amount of the claim.
 
 Perry v. Certificate Holders of Thrift Savings,
 
 320 F.2d 584, 590 (9th Cir.1963);
 
 In re Vega Baja Lumber Yard, Inc.,
 
 285 F.Supp. 143, 144 (D.P.R.1968);
 
 In re Pizza of Hawaii, Inc.,
 
 40 B.R. 1014, 1016 (Bankr.D.Hawaii 1984). In addition, it must evidence an intent on the part of the claimant to hold the debtor liable for that claim.
 
 In re International Horizons, Inc.,
 
 751 F.2d at 1218;
 
 In re Sems Music Co.,
 
 24 B.R. at 380;
 
 In re Guardian Mortgage Investors,
 
 15 B.R. 284, 285 (Bankr.M.D.Fla.1981). Finally, the courts have universally held that the debtor’s scheduling of a creditor’s “disputed, contingent, or unliquidated” claim does not constitute an amendable proof of claim; to hold otherwise, would completely eviscerate the statutory requirement that such creditor file a formal proof of claim.
 
 See, e.g., In re Pigott,
 
 684 F.2d 239, 245 (3d Cir.1982);
 
 Hoos & Co. v. Dynamics Corp. of America,
 
 570 F.2d 433, 439 (2d Cir.1978);
 
 Perry v. Certificate Holders of Thrift Savings,
 
 320 F.2d at 589.
 

 Applying these principles, courts have deemed an amendable proof of claim “filed” where, for example, the creditor, in applying to the court for relief from an automatic stay, set forth in great detail the nature of his claim,
 
 In re Guardian Mortgage Investors,
 
 15 B.R. 284, 285-87 (Bankr.M.D.Fla.1981), or the bankruptcy court was fully informed as to the nature of the claim because the claim had been in litigation before the court for several months.
 
 In re Pizza of Hawaii, Inc.,
 
 40 B.R. at 1016.
 
 See also Sun Basin Lumber Co. v. United States,
 
 432 F.2d 48, 50 (9th Cir.1970).
 
 [7]
 
 
 *820
 
 Conversely, courts have not allowed a creditor to file an amended proof of claim where the creditor had done nothing more than telephone the trustee in bankruptcy and apprise him of its claim,
 
 In re Pigott,
 
 684 F.2d at 244, or where the trustee had knowledge of a federal district court suit between the creditor and the debtor but the creditor had done nothing in the bankruptcy court to apprise that court of its claim.
 
 In re Vega Baja Lumber Yard, Inc.,
 
 285 F.Supp. at 146.
 

 This case law makes it clear that SAFCO’s knowledge of Biseayne’s claim, SAFCO’s listing of Biscayne as a “disputed” creditor in its schedule of claims and statement of financial affairs, and Biscayne’s state court litigation with SAFCO did not provide the bankruptcy court a sufficient basis for allowing Biscayne to file an amended proof of claim. The only question before the courts below, therefore, was whether the notice of appearance, filed by Biscayne’s attorney, constituted an amendable proof of claim.
 

 The notice of appearance requested only that the bankruptcy court forward counsel’s copies of all future pleadings filed in the Chapter 11 proceeding. It did not provide the bankruptcy court with any information as to the existence, nature, or amount of Biscayne’s claim against SAF-CO. Nor did it, in any way, evidence an intent on the part of Biscayne to hold SAF-CO liable for that claim. As SAFCO has correctly pointed out, a notice of appearance might be filed by an attorney for a variety of reasons. An attorney might “appear” in a case, for example, for no other purpose than to monitor the progress of the proceeding. In short, there is nothing in the filing of a notice of appearance which, in itself, puts a bankruptcy court on notice that the party for whom the attorney is appearing has a claim against the debtor, much less the nature or amount of any such claim. The bankruptcy court did not err in refusing to treat counsel’s notice of appearance as an amendable proof of claim by Biscayne, and its decision, as well as that of the district court is, accordingly,
 

 AFFIRMED.
 

 [1]
 

 . Rule 1007(b) provided:
 

 (b)
 
 List of Creditors and Equity Security Holders.
 
 The debtor shall file with the court (1) a list of the debtor’s creditors of each class, showing the amounts and character of their claims and securities and, so far as known, the name and address or place of business of each creditor and a statement whether the claim is disputed, contingent or unliquidated as to amount, and (2) a list of the debtor's equity security holders of each class showing the number and kind of interests registered in the name of each holder, and the last known address or place of business of each holder.
 

 [2]
 

 . Section 502(c) provides:
 

 (c) There shall be estimated for purpose of allowance under this section—
 

 (1) any contingent or unliquidated claim, fixing or liquidation of which, as the case may be, would unduly delay the closing of the case; or
 

 
 *816
 
 (2) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment.
 

 [3]
 

 . Biscayne’s attorney did not state, and the record does not otherwise indicate, the date Biscayne employed her to represent it in the Chapter 11 reorganization proceeding. What the record indicates is what we have recited in the text
 
 supra
 
 : that counsel noticed her appearance for Biscayne on July 1, 1983, 9 days after the court’s order setting the August 4 bar date; that Biscayne had received a copy of that order and that counsel requested the court to furnish her copies of all pleadings and orders filed thereafter. It is not disputed that Biscayne’s new counsel knew that the August 4 bar date had been set; what she did not know, according to her subsequent representation to the court, was that her predecessor had not filed a proof of claim in behalf of Biscayne.
 

 [4]
 

 . In the district court Biscayne also claimed, as it does here, that the district court and the bankruptcy court were without subject matter jurisdiction of SAFCO's Chapter 11 proceeding, in light of the Supreme Court’s decision in
 
 Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Biscayne argues that the
 
 Northern Pipeline
 
 decision held 28 U.S.C.A. § 1471 (West.Supp.1984) unconstitutional in its entirety. It also argues that the emergency local rule, adopted by the Eleventh Circuit and the Southern District of Florida in the aftermath of
 
 Northern Pipeline,
 
 which permitted district courts automatically to refer a bankruptcy action to the bankruptcy court, was unconstitutional.
 

 Recently, in
 
 In re Committee of Unsecured Creditors of F S Communications Corp.,
 
 760 F.2d 1194 (11th Cir.1985), we held that the Supreme Court in
 
 Northern Pipeline
 
 only struck down as unconstitutional 28 U.S.C.A. § 1471(c), the jurisdictional grant of power to the bankruptcy courts; it did not disturb 28 U.S.C.A. §§ 1471(a) and (b) which granted subject matter jurisdiction of bankruptcy matters to the federal district courts. We also held that the Northern District of Georgia’s emergency rule, identical to the local rule operative in this case, which allowed the district court automatically to refer bankruptcy actions to bankruptcy courts, was constitutional. Our decision in that case accords with those of every other circuit that has ruled on this issue.
 
 E.g., Lindquist v. Metropolitan Bank of Bloomington,
 
 730 F.2d 1204, 1205 (8th Cir.1984);
 
 Oklahoma Health Services Federal Credit Union v. Webb,
 
 726 F.2d 624, 625 (10th Cir.1984);
 
 Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,
 
 709 F.2d 190, 200 (3d Cir.),
 
 cert. denied,
 
 - U.S. -, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983). We therefore reject Biscayne’s argument that the courts below acted in an absence of jurisdiction.
 

 [5]
 

 . The present bankruptcy rules went into effect on August 1, 1983, replacing the interim local rules adopted by the bankruptcy court of the Southern District of Florida. These rules, and not the interim rules, governed the filing of proofs of claim in this case.
 

 [6]
 

 . In
 
 Bonner v. City of Prichard,
 
 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.
 

 [7]
 

 . Biscayne cites
 
 Fausett v. Murner,
 
 402 F.2d 961 (5th Cir.1968), as requiring the reversal of the decisions in issue.
 
 Fausset,
 
 which held that the creditor could file an amended claim because the bankruptcy court was informed of the existence, nature, and amount of the claim from its own files, is factually inapposite. Moreover, it appears that it has since been restricted to its particular circumstances.
 
 See In re International Horizons, Inc.,
 
 751 F.2d 1213 (11th Cir.1985);
 
 *820
 

 In re Commonwealth Corp.,
 
 617 F.2d 415 (5th Cir.1980).
 

 Additionally, Biscayne has forwarded to us, as supplemental authority,
 
 In re Modular Engineering Corp.,
 
 41 B.R. 52 (Bankr.S.D.Tex.1984), in support of its position that the courts below should have allowed it to file an amended proof of claim. In
 
 In re Modular,
 
 the bankruptcy court allowed a creditor in a Chapter 11 proceeding to file an amended proof of claim, even though it had filed nothing in the bankruptcy court apprising that court of the existence, nature, or amount of its claim, because the creditor, in a prior arbitration proceeding between it and the debtor, had set out its claim against the debtor, made demand upon the debtor, and evidenced its intent to hold the debtor liable.
 

 Although, previously, courts, applying former Bankruptcy Rule 509(c) and present Bankruptcy Rule 5005(b), have treated a proof of claim filed with a trustee or debtor-in-possession as having been filed with the bankruptcy court, they can only do so now when it is clear that the creditor intended to file its proof of claim with the bankruptcy court but erroneously delivered it to the trustee or debtor-in-possession.
 
 See
 
 Fed.R. Bankr.P. 5005(b);
 
 In re Evanston Motor Co.,
 
 735 F.2d 1029, 1031-32 (7th Cir.1984);
 
 see also In re International Horizons, Inc.,
 
 751 F.2d at 1218. Because the court in
 
 In re Modular
 
 failed to recognize this "misdelivery” requirement of Rule 5005(b), we reject its holding and find, consequently, that it lends no support to Biscayne’s position.