NEBRASKA SECURITY BANK, et al., Plaintiffs,

v.

SANITARY & IMPROVEMENT DISTRICT NO. 7, etc., Defendant.

No. CV90–L–145.

United States District Court, D. Nebraska.

Sept. 21, 1990.

Thomas H. Dahlk and Sandra L. Dougherty, Lieben, Dahlk, Whitted, Houghton & Jahn, Elaine M. Martin of Martin & Martin, Omaha, Neb., for plaintiffs.

Richard J. Butler and Mark A. Beck of Erickson & Sederstrom, Kenneth C. Stephan of Knudsen, Berkheimer, Richardson & Endacott, Lincoln, Neb., for defendant.

## MEMORANDUM AND ORDER

URBOM, District Judge.

Appellants, Arley A. Westendorf and Nebraska Security Bank, appeal the decision of the United States bankruptcy court[1] denying their motions for leave to file a proof of claim under the Chapter 9 bankruptcy filed by the appellee, Sanitary Improvement District #7. The bankruptcy court held that, although the appellants did not receive actual notice of the last date upon which to file a claim, they had knowledge of the case and were barred from participating in the distribution because they had failed to file a formal proof of claim prior to confirmation of the bankruptcy plan.

---

[1] Chief Judge Timothy J. Mahoney, United States Bankruptcy Judge for the District of Nebraska.

On appeal, the bankruptcy court's findings of fact shall not be set aside unless they are clearly erroneous; conclusions of law will be reviewed *de novo*. *In re Martin*, 761 F.2d 472, 474 (8th Cir.1985). I find no error in the application of the Bankruptcy Code to the facts of this case. The statutory language is unambiguous and will be given its plain meaning. Accordingly, I shall affirm the decision of the bankruptcy court.

## FACTS

The facts are undisputed. On January 10, 1985, the appellee filed a petition under Chapter 9 of the Bankruptcy Code. A notice of the filing for bankruptcy was sent to all parties in interest, including the appellants. During February 1985 a list of creditors was filed by the appellee. Both appellants were included on that list of creditors.

Neither appellant received official notice that the claims bar date was September 15, 1985, or a subsequent notice that all claims were listed as disputed, contingent or unliquidated. The appellants did not file a proof of claims before the claims bar date.

In the fall of 1988, the debtor had proposed a plan of adjustment under Chapter 9. All parties, including the bank and Westendorf, received notice of a hearing on a disclosure statement and eventually received a copy of the disclosure statement and the plan of adjustment. In addition, both appellants received ballots to be used in voting for or against the proposed plan. Both appellants voted in favor of the plan of adjustment.

Between November 1988 and late May 1989, the court held a number of hearings on amended or modified plans which superseded the original plan voted upon in November 1988. The appellants received notice of these meetings and notice of an opportunity to revote if they decided to change their votes. The bankruptcy court initially denied confirmation of the plan because it did not provide adequate protection for the bondholders as required by law. An amended plan was subsequently confirmed.

This case was hotly contested and, as a result, several disclosure statements and plans were filed prior to confirmation. The appellants received a disclosure statement which recited the claims bar date and stated that all debts were listed as disputed, contingent and unliquidated, and would not be considered "allowed claims" unless a proof of claims had been filed. The appellants subsequently received plans of adjustment which contained similar language as found in the disclosure statement.

After confirmation, the disbursing agent under the plan mailed a letter to all bondholders and warrantholders, including the appellants, instructing them to submit their debt instruments for exchange under terms of the plan. The deadline for submitting exchange documentation was December 31, 1989. The appellants immediately complied with the instructions.

Prior to receipt of the disbursing agent's letter, the appellants received official notice of a hearing on the debtor's application for discharge, scheduled for September 5, 1989. On September 7, 1989, an order of discharge was entered by the bankruptcy court. Shortly after the order of discharge was entered, the appellants were advised that their claims would not be honored since they had failed to file proofs of claim. On December 21, 1989, the appellant Nebraska Security Bank filed its motion for leave to file a proof of claim. The appellant Westendorf filed a similar motion on January 10, 1990. An evidentiary hearing was held on January 20, 1990, and the bankruptcy court denied the motion on March 6, 1990.

The appellants assert they were not discharged by the September 7, 1989, order because they had no notice of the claims bar date and that discharge, under these circumstances, would violate their constitutional right to due process. In addition, they contend that there has been an informal proof of claim which they should now be allowed to amend. Finally, appellant Westendorf asserts that the City of Lincoln assumed this debt when it annexed the district.

## DISCHARGE UNDER 11 U.S.C. § 944

█ Section 944 governs Chapter 9 discharges and provides, in pertinent part, that confirmation effectively discharges the debtor from all debts except those "owed to an entity that, before confirmation of the plan, had neither notice nor actual knowledge of the case." *Id.* § 944(c)(2). In contrast to other discharge provisions in the Bankruptcy Code, this section does not require creditors to have a reasonable opportunity to file timely proofs of claim prior to confirmation. The only limitation on discharge in Chapter 9 is for those obligations owed to creditors who did not have notice or actual knowledge of the case before confirmation.

The language of section 944 is unambiguous. Congress specifically elected to except from discharge only those creditors who knew nothing of the case.

> "The petitioner is not discharged ... from any claim the holder of which had neither timely notice nor actual knowledge neither of the petition nor of the plan. It is only fair, and most likely required by the Due Process Clause, that a creditor's claim not be discharged if the creditor knew nothing of the case. Thus, if he knew of either the petition or the plan, either through timely notice from the court or the petitioner, or through his actual knowledge, then his claim is discharged. Otherwise, it is not."

H.R. No. 686, 94th Cong., 2d Sess. 34, *reprinted in* 1976 U.S.Code Cong. & Admin.News 539, 572.

According to the United States Supreme Court, "the plain meaning [of Bankruptcy Code provisions] should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.'" *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). This case does not represent one of those "rare cases." The bankruptcy court's decision comports with clear legislative intent to except only creditors who were ignorant of the proceedings. Ignorance of the claims bar date itself is not sufficient to survive discharge.

It is undisputed that the appellants had knowledge of the Chapter 9 proceedings. In fact, prior to confirmation, they received disclosure statements and adjustment plans which clearly set forth the requirements for allowed claims. The fact that they erroneously received ballots with which to cast their votes for or against the plan does not defeat the language and intent of section 944. Under the circumstances of this case, section 944 requires that the appellants be bound by the confirmation order and not be allowed to participate in the distribution under the plan.

Moreover, the appellants' constitutional right to due process was not violated. Due process requires an *opportunity* to be heard at a meaningful time. As shown earlier, Congress specifically recognized that due process may well preclude a statutory scheme which does not guarantee creditors such an opportunity prior to discharge. Section 944 adequately addresses this possible constitutional requirement. The appellants knew of the bankruptcy proceedings and had ample opportunity to inquire into the status of their claims prior to confirmation. Once the opportunity to be heard had presented itself, it is the responsibility of the creditor to make whatever inquiry and/or response necessary to protect its claim. *See Matter of Gregory,* 705 F.2d 1118, 1123 (9th Cir.1983); *In re Burke,* 76 B.R. 62 (Bankr.D.Vt.1987). The appellants' failure to heed the statements defining allowed claims will not support a due process claim.

Since I find that discharge occurred upon confirmation, there is no need to resolve whether the City of Lincoln assumed legitimate debts of the appellee.

## EQUITABLE ESTOPPEL

█ The appellants argue that equity requires they be allowed to file a late proof of claim. According to the appellants, the appellee, by sending them disclosure statements, proposed plans, and ballots, treated them the same as creditors with allowed claims and so lulled them into inaction.

Pursuant to Rule 2002 of the Bankruptcy Code, the mailings were sent to creditors regardless of the filing of a proof of claim.

Under Nebraska law, application of equitable estoppel requires

"[A]s to the party estopped, (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; (3) knowledge, actual or constructive, of the real facts; as to the other party, (4) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice."

*Jennings v. Dunning*, 232 Neb. 366, 371, 440 N.W.2d 671, 675 (1989).

Under this standard, the appellants' are not entitled to the benefit of this doctrine. As to the appellee, the party to be estopped, there is no evidence of elements (1) or (2) to support the application of this doctrine. Furthermore, as to the appellants, element (4) is controverted by evidence before this court. The appellants had an opportunity to ascertain the truth as to the status of their claims. The mailings received before confirmation recited the claims bar date and the fact that all claims were scheduled as disputed, contingent, or unliquidated. Application of this doctrine is appropriate only if the elements are proved by clear and convincing evidence. *Id.* In this case, they are not.

## INFORMAL PROOF OF CLAIMS

The appellants' contention that an informal proof of claim was filed for them and that they should be allowed to amend is also without merit. The prebar filing by the appellee which listed the appellants as creditors, although timely, was insufficient to create an informal claim. Similarly, the postbar activity of the appellants was too late.

■ An informal claim may be asserted only when it is apparent that the creditor intends to seek recovery from the estate and when some filing is made, sufficient to support an informal proof of claim, *prior* to the claims bar date. *In re International Horizons, Inc.*, 751 F.2d 1213, 1217 (11th Cir.1985). The Ninth Circuit found the creditor's filing of a motion for relief from automatic stay, in addition to other documents filed by creditor, sufficient to constitute an amendable proof of claim. *See, e.g., Matter of Pizza of Hawaii, Inc.*, 761 F.2d 1374 (9th Cir.1985). On the other hand, standing alone, a motion for relief from stay to pursue foreclosure action in state court did not support an amendable proof, because it did not evidence the creditor's intent to hold the estate liable for the debt. *In re Mitchell*, 82 B.R. 583 (Bankr. W.D.Okla.1988).

In *In re Haugen Construction Services, Inc.*, 88 B.R. 214 (Bankr.D.N.D.1988), the court found an amendable proof of claim based on the creditor's extensive involvement with the bankruptcy proceedings, including spurring the trustee into pursuit of preferential actions. In addition, the creditor was included on the list of creditors. The bankruptcy court found that the creditor's *prebar* activity was sufficient to put the trustee on notice of the nature and amount of the claim.

■ The appellants assert that the appellee's "List of Creditors," filed February 15, 1985, is sufficient to constitute an amendable proof of claim. However, the debtor's own inclusion of the debt on the list of creditors does not provide him with any indication that the creditor will seek to enforce that debt against the estate. The "debtor's scheduling of creditor's 'disputed, contingent, or unliquidated' claim does not constitute an amendable proof of claim; to hold otherwise, would completely eviscerate the statutory requirement that such

creditor file a formal proof of claim." *Biscayne 21 Condominium Association, Inc. v. South Atlantic Financial Corp.*, 767 F.2d 814, 819 (11th Cir.1985). There being no other prebar filings or activity, I find no informal proof of claim which the appellants could amend.

## CONCLUSION

I fail to find that the bankruptcy court erred in its fact finding or its conclusions of law. The appellants' motions for leave to file a proof of claim was properly denied.