## In re MALKOVE & WOMACK, INC., Debtor.

### MALKOVE & WOMACK, INC., Plaintiff,

v.

### WESTERN STEER–MOM & POP'S INC. (WSMP, INC.), Defendant.

Bankruptcy No. 90–00733.

Adv. No. 91–40014.

United States Bankruptcy Court,
N.D. Alabama.

Dec. 31, 1991.

Earl Underwood, Jr., Anniston, Ala., for plaintiff.

Paula Cobia, Anniston, Ala., for defendant.

## MEMORANDUM OPINION

JAMES S. SLEDGE, Bankruptcy Judge.

### INTRODUCTION

The debtor, and also the plaintiff in this adversary proceeding, Malkove and Womack, Inc., (hereinafter, "M & W"), doing business as Western Steer Florence, Inc., commenced this bankruptcy case by filing a voluntary petition under title 11, chapter 11, United States Code, on January 19, 1990. This Court entered an order confirming M & W's plan of reorganization on May 30, 1991.

M & W commenced the above-styled adversary proceeding by filing a complaint against the defendant, Western Steer–Mom and Pop's, Inc, (hereinafter, "WSMP"), on February 19, 1991, seeking an "order of judgment to determine the nature, extent, validity, priority and indebtedness of each of the parties' asserted rights, titles, and interests" arising out of a failed franchise agreement entered into between the parties. WSMP answered said complaint and asserted a counterclaim seeking to enforce various provisions of the franchise agreement. Specifically, WSMP sought to enforce the conditions of the franchise agreement relating to recovery of a termination fee, royalty fees, advertisement fees and amounts owed for products purchased by M & W from WSMP, enforcement of provisions regarding the return of operating manuals, and injunctive relief ordering M & W to cease use of trade names and trade marks of WSMP. The issues regarding the return of operating manuals and the discontinuance of trade names was confessed by M & W and by stipulation of the parties, said issues were not considered by this Court in rendering its opinion. A separate final judgment, however, shall incorporate the stipulation of the parties regarding the operating manuals and the use of trade names.

The legal issues, and the resolution of same, were submitted to the Court on stipulated facts. After considering the stipulated facts, the stipulated evidence, and reviewing the case file, of which the Court takes judicial notice, the Court finds the facts to be as follows:

### FINDINGS OF FACT

1. WSMP is a North Carolina corporation engaged in the business of franchising Western Steer Family steak houses.

2. M & W is an Alabama Corporation.

3. Pursuant to an instrument dated May 30, 1984, M & W and WSMP entered into a franchise agreement. Said franchise agreement contained various clauses regarding the payment of certain franchise fees, royalty fees and other applicable assessments in the event of a breach by the franchisee.

4. On January 19, 1990, M & W filed for relief, in this Court, under title 11, chapter 11, United States Code. In its schedule of creditors holding the 20 largest unsecured claims, M & W scheduled a debt owed to

WSMP in the amount of $117,709.16 and did not indicate that the claim was contingent, unliquidated, disputed or subject to set-off.

5. The Court established a bar date for filing proofs of claims in the bankruptcy case of May 15, 1990. Said date was not extended by the Court nor was a request made by any party to extend said date.

6. During the pendency of the bankruptcy case, WSMP filed a proof of claim on May 11, 1990, in the amount of $62,021.63 plus interest, attorney's fees, and administrative fees and expenses. Said claim was based on an arbitrator's award rendered on April 30, 1990, and therefore did not include any claims for termination or rejection of the franchise agreement.[1] Furthermore, said claim was the only claim filed by WSMP during the bankruptcy case.

7. On January 25, 1991, M & W filed an amended disclosure statement. In said disclosure statement, M & W intimated that the franchise agreement [had] no value and the debtor intend[ed] to reject the [franchise] agreement with WSMP.

8. WSMP objected to the amended disclosure statement and M & W subsequently filed a second amended disclosure statement. The second amended disclosure statement was approved by the Court on February 5, 1991.

9. On February 8, 1991, M & W served the plan along with the second amended disclosure statement on all parties in interest. Both the disclosure statement and the plan of reorganization provided for M & W to reject the franchise agreement. The plan also provided that, if confirmed, its provisions would bind M & W and any creditor.

10. On February 19, 1991, M & W filed the above-styled adversary proceeding. Paragraph four of the complaint indicated an intention to reject the franchise agreement with WSMP. On March 20, 1991, WSMP filed an Answer and Counterclaim requesting the Court to enforce the franchise agreement upon termination and award any damages to which WSMP was entitled.

11. On March 12, 1991, a hearing on confirmation of the plan of reorganization was held before this Court. WSMP filed a ballot rejecting said plan, but did not file an objection to the plan. On May 30, 1991, the Court entered an order confirming M & W's plan of reorganization. The findings of fact and conclusions of law stated that the debtor rejected the franchise agreement with WSMP. Said confirmation order was not appealed. M & W executed and delivered a note payable to WSMP dated August 29, 1991, in the principal amount of $117,709.16, together with interest at the rate of 6% per annum payable in annual installments of $19,156.62. The note is for the amount scheduled by M & W that it owed to WSMP.

12. Other than the complaint in the present adversary proceeding, the disclosure statements and the later amended disclosure statements, and the plan of reorganization, M & W did not file a formal rejection of the franchise agreement. Likewise, WSMP never filed a motion to compel M & W to assume or reject the franchise agreement.

13. At no time during the bankruptcy case did WSMP request that the Court to extend, past the bar deadline, the time for filing proofs of claims.

14. Following a hearing on motion for summary judgment when the Court questioned the absence of a proof of claim, on September 10, 1991, WSMP amended its counterclaim and requested that this Court consider the defendant's counter claim as a proof of claim for the damages, if any,

---

**1.** Throughout the context of this opinion, the Court mentions WSMP's failure to file a proof of claim. Further discussion regarding the failure to file a proof of claim is a reference to WSMP's failure to file a claim for damages that might have been owed as a result of M & W's rejection of the franchise agreement. Para-

graph 17(b) of the franchise agreement provided that rights of the parties for enforcement or breach of the agreement are cumulative, thus the agreement authorized claims for sums due while agreement was in effect in addition to claims arising from termination of the agreement.

resulting from the debtor's rejection of the franchise agreement.

## CONCLUSIONS OF LAW

The dispute in this case arises out of M & W's rejection and breach of a franchise agreement entered into between M & W and WSMP. The franchise agreement provided, *inter alia,* that M & W's breach of the agreement would result in a termination fee and royalty fee owed to WSMP by M & W. Specifically, the franchise agreement required M & W to pay a termination fee in the greater amount of $200,-000.00 or 20% of the gross sales of the restaurant from the immediately preceding thirteen (13) four (4) week accounting periods.

After filing for protection under title 11, chapter 11, United States Code, M & W scheduled a debt owed to WSMP in the amount of $117,709.16. Furthermore, the debt was not scheduled as disputed, unliquidated, or contingent. The precise nature of the scheduled debt was never revealed to the Court. As the facts surrounding this adversary proceeding began to unravel, it became clear to this Court that WSMP claimed damages resulting from M & W's rejection and breach of the franchise agreement. The exact amount of the breach of contract damages, if any, is unclear to the Court and whether the scheduled debt represents any or all of potential damages is, again, unknown to the Court. Because WSMP never filed a claim for damages, resulting from breach of the franchise agreement, a guess by the Court as to nature of the scheduled debt, the amount of contract damages, or any sort of relationship between the former and latter, would be nothing more than pure speculation. The amendment to the counterclaim adds a claim for $10,049.22 for the unpaid post-petition royalty fees. However, WSMP failed to present any evidence to support any judgment other than the rejection of the agreement and the terms of the agreement.

Some three months prior to entry of the confirmation order, M & W filed this adversary proceeding to determine its rights and liabilities under the franchise agreement. Subsequent to the filing of the adversary proceeding, the Court confirmed the debtor's plan and approved the rejection of the franchise agreement. Confirmation Order at 4. The issue in this case is whether WSMP's failure to file a proof of claim results in a discharge, pursuant to 11 U.S.C. section 1141(d)(1)(A), of contract damages in excess of those amounts scheduled by the debtor or contained in WSMP's proof of claim filed on May 11, 1990. For the foregoing reasons, this Court concludes that any amounts claimed by WSMP in excess of those amounts scheduled by the debtor as liquidated, undisputed, and non-contingent or those amounts contained in WSMP's proof of claim are discharged pursuant to the provisions of 11 U.S.C. section 1141(d)(1)(A).

■ Initially, the Court is faced with a creditor's alleged debt resulting from the debtor's rejection and breach of an executory contract. Ordinarily, where there is a disputed debt or where an executory contract is rejected by the debtor, and at some point during the administration of the bankruptcy estate, the creditor would file a proof of claim evidencing the debt. Bankruptcy Rule 3003 establishes the formal procedure for filing a proof of claim. If a claim were filed, the amount of the claim would be determined by the Court under the applicable provisions of 11 U.S.C. section 502. Specifically, damages arising out of the breach of an executory contract would be either allowed or denied pursuant to 11 U.S.C. section 502(g). The threshold problem, however, and the crux of the entire case, hinges on WSMP's failure to file a proof of claim. Because the Court was never asked to determine the amount of WSMP's alleged claim, as there was never a contest of a nonexistent proof of claim as contemplated by § 502(a) or (b), the Court must assume that WSMP had no intention of disputing M & W's scheduled debt.

After seeking protection in bankruptcy, and in the bankruptcy administration process, the debtor must file a schedule of assets and liabilities. 11 U.S.C. § 521. The debtor's schedules list various debts

owed. Typically, creditor's claims may be either disputed or undisputed, contingent or non-contingent, liquidated or unliquidated. F.R.B.P. 3003(b)(1). Any creditor's claim that is scheduled as disputed, contingent, or unliquidated, must file a proof of claim within the time fixed by the bankruptcy court. If such a creditor fails to file a timely proof of claim, it loses the right to participate in the reorganization. 11 U.S.C. § 1111. If a proof of claim is duly filed by a creditor, and the debtor wishes to dispute the amount contained in the proof of claim, the code provides for the determination of the amount of the claim by the bankruptcy court. 11 U.S.C. § 502(b). Furthermore, even if a debt is scheduled as "undisputed ...," the creditor may nonetheless file a proof of claim and said claim "shall supersede any scheduling of that claim ... pursuant to § 521(1) of the Code. F.R.B.P. 3003(c)(4). Therefore, the creditor's filing of a proof of claim places the initial burden on the debtor to dispute the amount contained in the proof of claim. If the debtor, however, schedules an amount owed and the creditor never files a proof of claim, then the debtor's treatment of the claim, in the plan, is binding on the creditor and subsequently discharges the debtor once the plan is confirmed, from any additional amounts that may be owed. 11 U.S.C. § 1141(d)(1)(A).

The Federal Rules of Bankruptcy Procedure provide that "[t]he schedule of liabilities filed pursuant to § 521(1) of the Code shall constitute prima facie evidence of the validity and amount of the claims of creditors, unless they are scheduled as disputed...." F.R.B.P. 3003(b). In addition to rule 3003(b), the Code provides that "[a] proof of claim ... is deemed filed under section 501 ... for any claim ... that appears in the schedules filed under section 521(1) ... except a claim ... that is scheduled as disputed, contingent, or unliquidated." 11 U.S.C. § 1111(a). In this case, M & W duly filed its schedule, pursuant to 11 U.S.C. section 521, and scheduled a debt owing to WSMP. Said debt, however, was not scheduled as "disputed, contingent or unliquidated." Thus, the issue is whether the damages owed are the amounts as set out in the franchise agreement or, conversely, only those amounts listed by the debtor in its petition?

WSMP argued that the debtor never rejected the franchise agreement, prior to confirmation, and therefore, WSMP had no reason to file a proof of claim. In other words, WSMP believes that it could not file a proof of claim for a debt that was not owed because the debtor, prior to entry of the order of confirmation, never rejected the franchise agreement. On the surface, WSMP's argument seems to have some validity. After examining the franchise agreement and the pleadings in this case, however, the Court is of the opinion that WSMP had written notice at least three months prior to confirmation, and possibly longer, of M & W's intent to reject and breach the agreement.

The franchise agreement provided that "[t]he Franchisee (M & W) may terminate th[e] ... [a]greement upon thirty (30) days written notice to the Franchisor (WSMP) of intent to terminate by tendering ... a termination fee...." Franchise Agreement at C–7. Thus, the conditions precedent to M & W's voluntary termination of the agreement required thirty days written notice of an intent to terminate and the tendering of the termination fee. On February 19, 1991, M & W filed their complaint instituting this adversary proceeding. The complaint was served on WSMP's corporate headquarters as well as WSMP's counsel. Paragraph four of the complaint states that "[t]he plaintiff ... intends to reject the agreement...." Based on the filing of the complaint, in this adversary proceeding, WSMP had written notice of M & W's intent to reject the agreement prior to confirmation. While it is true that the Court did not allow rejection until the plan was confirmed, WSMP, nonetheless, had direct knowledge of the intent to terminate. The language of the franchise agreement may then be viewed as permitting written notice to WSMP of an intent to terminate prior to authorization by the bankruptcy court of the actual rejection of the agreement. Accordingly, WSMP was required to assert any damage claim it may have

had under the agreement in the form of a proof of claim. Because WSMP never filed a proof of claim, the Court concludes that the debt owed to WSMP, resulting from M & W's rejection and breach of the franchise agreement, is the amount scheduled by M & W.

■ Within the chapter 11 reorganization process, the debtor in possession is given wide latitude as to the threshold decision of whether to assume of reject such a contract. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). Furthermore, "[i]n a chapter 11 reorganization, a debtor-in-possession has until a reorganization plan is confirmed to decide whether to accept or reject an executory contract, although a creditor may request the Bankruptcy Court to make such a determination within a particular time." *Bildisco*, 465 U.S. at 529, 104 S.Ct. at 1198. Even though the debtor has the authority to assume or reject an executory contract, Congress provided a safeguard for other parties to the contract, to ascertain their position, in relation to the debtor, as to the terms of the contract. F.R.B.P. 6006(b). Specifically, the party to an executory contract may file a motion to compel assumption or rejection of the executory contract. *Id.* Therefore, any party to an executory contract may petition the Court to set a time schedule in which the debtor must either assume or reject the contract. *Id.* Given the adversarial relationship that existed between M & W and WSMP, throughout the progression of the bankruptcy case, it would seem to this court, that WSMP should have sought to ascertain its rights under the contract. The bankruptcy rules certainly provide such a mechanism.

At no time did WSMP move the Court for an order requiring M & W to assume or reject the franchise agreement. WSMP's failure to act (i.e. failure to file a proof of claim or request the assumption or rejection of the agreement) leads to the conclusion that WSMP did not consider the debt, listed in the schedules, as "disputed, contingent, or unliquidated." Four months following confirmation of the plan and seven months following the filing of the complaint in this adversary proceeding, WSMP amended its counterclaim requesting that this Court "enter an order treating the counterclaim ... as a proof of claim ... arising from the rejection of the franchise agreement...." Amendment to counterclaim at 2. If the Court took this as a valid request, then the complaint initiating this adversary proceeding would then be viewed as an objection to a proof of claim which was not in existence at the time of the complaint. WSMP's solicitation, however, regarding the treatment of the counterclaim as a proof of claim is not completely groundless.

■ WSMP's filing of the counterclaim might be viewed as an informal proof of claim. This circuit has authority supporting the notion that a creditor may file an informal proof of claim and later amend the claim to comport with the code and rules. *Charter Co. v. Dioxin Claimants*, 876 F.2d 861 (11th Cir.1989); *Biscayne 21 Condominium Ass'n, Inc., v. South Atlantic Fin. Corp.*, 767 F.2d 814 (11th Cir. 1985), *cert. denied* 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986). The filing of an informal proof of claim will be accepted by the Court only if the document filed "apprise[s] the court of the existence, nature, and amount of the claim ... [and provide] evidence [of] an intent on the part of the claimant to hold the debtor liable for that claim." *E.g., Biscayne 21*, 767 F.2d at 819. The test as set out by the Eleventh Circuit Court of Appeals, regarding the filing of an informal proof of claim, would seem to be satisfied by the counterclaim filed by WSMP on March 20, 1991, provided, however, that the requirement of stating the amount of the claim is very close or even questionable. Before the bankruptcy court may allow the filing of a formal proof of claim, as a condition precedent to consideration of an informal proof of claim, the document which might be construed as an informal proof of claim must be filed before the bar deadline for filing claims. *See Charter*, 876 F.2d at 863 (motion for relief from the stay filed prior to bar date sufficient to constitute informal proof of claim); *Biscayne*, 767 F.2d at 819 (filing of notice

of appearance, prior to bar date, not sufficient to constitute informal proof of claim); *In re Square Shooter, Inc.*, 130 B.R. 108 (Bankr.S.D.Ala.1991). Furthermore, the potential claimant must eventually file a claim which substantially complies with the bankruptcy rules. *Biscayne*, 767 F.2d at 819. The bar deadline in this case, established by the Court, was May 15, 1990. Prior to that time, there is nothing in the bankruptcy case file which may be interpreted, by the Court, as an informal proof of claim. Because the counterclaim was filed after the bar date and because the Court was never requested to extend the time for filing proofs of claims, the theory regarding informal proofs of claims is rejected. Both the Code and the Rules provide a relatively simple procedure for determination and allowance of claims and the Court will not stretch the clear intent of Congress, as outlined in the Code and the Rules, to meet such a request.

The majority of the case law that addresses the acceptance or rejection of executory contracts, and the post confirmation effect of the chapter 11 discharge provision contained in 11 U.S.C. section 1141(d)(1)(A), usually involve contracts that are never expressly accepted or rejected prior to confirmation or never expressly accepted or rejected by the plan of reorganization. *E.g, In re Public Ledger, Inc.*, 161 F.2d 762 (3rd Cir.1947); *Consolidated Gas Elec. Light & Power Co. of Baltimore v. United Ry. & Elec. Co. of Baltimore*, 85 F.2d 799 (4th Cir.1936), *cert. denied*, 300 U.S. 663, 57 S.Ct. 493, 81 L.Ed. 871 (1937); *Continental Country Club, Inc. v. Burr*, 114 B.R. 763 (Bankr.M.D.Fla.1990); *Orcon, Inc., v. Nevada Emergency Serv., Inc.*, 39 B.R. 859 (Bankr.D.Nev.1984). The analysis of the cases dealing with the treatment of executory contracts post confirmation, while helpful in understanding the role of executory contracts in a chapter 11 case, are not directly applicable in the present case. Therefore, as those cases hold, the franchise agreement cannot be seen as implicitly flowing to the debtor or surviving the plan of reorganization. *See e.g., Public Ledger*, 161 F.2d at 767 (Labor contract not expressly rejected by the trustee and held to be "effective throughout the administration of the estate ... [and allowing] for the employees [to] participate in the estate funds ... in satisfaction of their claims"); *see also Continental*, 114 B.R. at 767 (Damages arising from post petition rejection of executory contract not discharged by section 1141).

On at least four separate occasions, in which WSMP should have been aware, M & W expressed a clear intent to reject the franchise agreement.[2] Thus, it cannot be said that WSMP earnestly believed that the franchise agreement would be assumed by M & W in its reorganized business.

In viewing the amount of the debt scheduled by M & W to WSMP, the Court is unable to determine the nature and source of said debt. Because M & W never moved to specifically reject the franchise agreement, although it did clearly express an intent to reject the agreement, the confirmation order authorized the rejection of the agreement. Likewise, because WSMP never moved the Court to set a time limitation for the assumption or rejection of the agreement, the Court did not set such a deadline. Thus, M & W had "until [the] ... plan [was] confirmed to decide whether to accept or reject [the agreement]...." *Bildisco* 465 U.S. at 529, 104 S.Ct. at 1198. Furthermore, because M & W's schedules listed the WSMP debt as undisputed, the Court never determined or estimated the amount of WSMP's claim resulting from the rejection.

Based on the inaction by both parties to the franchise agreement, the issue arises as to whether the Court was under a duty to question counsel for M & W as to the source of the debt and whether M & W intended to reject the franchise agreement prior to confirmation. Conversely, should the Court inquire as to how a creditor wishes to proceed in those cases involving

---

2. The intent of M & W to reject the franchise agreement was contained in the disclosure statement approved by the Court, in the plan of reorganization, in the complaint initiating this adversary proceeding and in the order confirming the plan of reorganization.

executory contracts where the agreement is not expressly rejected prior to confirmation? The obvious answer, of course, is that the Court is not in the lawyering business. In analyzing both sides of the issue, however, it appears to the Court that WSMP, had it chosen to do so, was in a superior position to obtain the full amount of its contract damages, termination fee, and royalty fees. One possible solution would have been for WSMP to file a claim for the amount it believed was owed under the franchise agreement. If M & W objected to the claim, the Court would have ordered the assumption or rejection of the franchise agreement within a specified time. And if rejected, the Court could have decided the allowed amount of the claim. Instead of asserting its rights through the claim administration process, WSMP instead chose to file an amendment to its counterclaim in this adversary proceeding and requested, post confirmation, that the Court treat the counterclaim as a proof of claim. As discussed, *supra*, the Court will not consider the counter claim as a proof of claim.

The rejection of an executory contract (i.e. franchise agreement) relates back to the date immediately preceding the filing of the bankruptcy petition. 11 U.S.C. § 365(g)(1). The Federal Rules of Bankruptcy Procedure, in effect at the time of confirmation, provided that "the Court shall fix ... the [when] proofs of claim ... may be filed." F.R.B.P. 3003(c)(3) (1990–91). Rule 3003 also provided that, "for cause," the court may extend the time for filing proofs of claims. *Id.* The deadline established by the Court for filing proofs of claim was May 15, 1990. At no time did WSMP request that the Court extend the time for filing a proof of claim. Although the new bankruptcy rules, effective August 1, 1991, provide that the court shall fix a time for filing a proof of claim resulting from the breach of an executory contract, said rule was not in effect at the time of confirmation. *See* F.R.B.P. 3003(c)(3) (making F.R.B.P. 3002(c)(4) applicable in a chapter 11 bankruptcy case) (1991–92 rules effective August 1, 1991). Thus, the Court, at the time of confirmation, was faced with a rule which allowed the late filing of a proof of claim, only upon the showing of good cause. Presumably, to reach the issue of good cause, WSMP should have moved for an extension or merely filed a claim. Thus, the Court need not address the issue of "cause" and "excusable neglect" as it would apply to extension of the bar date. F.R.B.P. 3003(c)(3), 9006(b).

## CONCLUSION

Based on the foregoing findings of fact and conclusions of law, the discharge provision of 11 U.S.C. section 1141(d)(1)(A)(i) and (ii) effectively discharged M & W from any additional debt owed under the terms of the franchise agreement other than those amounts listed by M & W in its schedules and the amounts contained in WSMP's proof of claim based on the arbitrator's award. M & W's scheduled debt constituted prima facie evidence as to the amount and validity of WSMP's claim for damages resulting from termination of the agreement. M & W is only liable, pursuant to the confirmed plan of reorganization, to WSMP for the amounts listed in the schedules and the amounts contained in the proof of claim filed by WSMP on May 11, 1990.

The Court shall enter a separate final judgment in accordance with the aforementioned findings of fact and conclusions of law.